Richard R. Friess, Esq. ISB #7820
friess@thwlaw.com
THOMSEN HOLMAN WHEILER, P.L.L.C.
2635 Channing Way
Idaho Falls, ID 83404
Telephone: (208) 522-1230
Fax: (208) 522-1277

Brian M. Lutz (admitted *pro hac vice*)
blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Fax: (415) 393-8306

Stephen C. Whittaker (admitted *pro hac vice*)
cwhittaker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: (949) 451-3800
Fax:  (949) 451-4220

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELALEUCA, Inc., an Idaho corporation, and MELALEUCA (CHINA) WELLNESS PRODUCTS CO., LTD., a wholly-owned subsidiary of Melaleuca, Inc.<br><br>      Plaintiffs,<br><br>v.<br><br>KOT NAM SHAN, an individual, and SHAKLEE CORP., a Delaware corporation,<br><br>      Defendants. | Case No. 4:18-cv-36<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION FOR PRELIMINARY INJUNCTION** |

The head of Melaleuca, Inc.'s ("Melaleuca") China business, Melaleuca (China) Wellness Products Co., Ltd. ("Melaleuca China"), recently left the Company, started working at one of Melaleuca's key competitors, and is engaging in activities that constitute plain breaches of his non-competition and confidentiality agreements with his former employer.  The conduct by this former employee, Kot Nam Shan—including appearing on stage with the competitor's sales team, touting his past affiliation with Melaleuca, and disclosing Melaleuca's confidential financial information, all for the benefit of his new employer—could not more clearly breach his contractual obligations to Melaleuca and Melaleuca China.

Kot, and his new employer, Shaklee Corporation ("Shaklee"), which has actively participated in and facilitated Kot's breaches, cannot credibly contest that Kot is in breach of his obligations to Melaleuca.  Instead, for most of this litigation, the Defendants have taken the position that the 2010 agreements at the heart of this lawsuit no longer are enforceable, and that later agreements Kot signed with Melaleuca China control here.   Defendants are incorrect as a matter of basic contract interpretation.  But even if the 2011 contracts do control, Plaintiffs still are entitled to a preliminary injunction on the basis of claims now asserted under the 2011 agreements.  In other words, no matter which contracts apply, Kot has breached his contractual obligations to Melaleuca and/or to Melaleuca China, and he must be preliminarily enjoined from working for Shaklee until this litigation is resolved—which Plaintiffs are willing to do on an expedited basis.

Plaintiffs have satisfied all of the elements for preliminary injunctive relief.  In particular, Plaintiffs are likely to succeed on their core breach of contract claims against Kot.  The breaches, which followed outright lies by Kot about his desire to leave the industry and not work for Shaklee, are obvious and are not likely to be heavily disputed given that Kot has admittedly

taken on the role as Shaklee's head of China.  Plaintiffs also are likely to succeed on their tortious interference claims against Shaklee, which itself lied to Melaleuca about whether it had interviewed and hired Kot, all for the purpose of securing the employment of Kot in spite of his ongoing contractual obligations to Melaleuca and Melaleuca China.

Plaintiffs have also shown that they are likely to suffer irreparable harm without preliminary injunctive relief, as Kot himself acknowledged in both his 2010 and 2011 agreements.  Even more, the harm associated with having a former senior officer with detailed knowledge of Melaleuca's operations, strategies, and confidential financial performance serving in a leadership role in the same market for a direct competitor is incalculable.  The balance of harms and public interest also strongly support enforcing Kot's promises to Melaleuca.

For these reasons, the Court should grant Plaintiffs' request for a preliminary injunction to prevent Kot from continuing to flout his contractual obligations until this case is resolved.

## I.  <u>BACKGROUND FACTS</u>

Plaintiffs incorporate by reference the factual allegations of the Amended Complaint (Dkt. No. 39), which are summarized below.

Melaleuca is an international consumer goods company that formulates, manufactures, and markets over 400 unique nutritional, personal care, and household products.  Felton Decl. ¶¶ 3-5.  Melaleuca sells consumer products to its customers through referrals from its independent Marketing Executives in 18 countries across the globe.  China is a key international market for Melaleuca.  *Id.* ¶ 3.  Melaleuca has achieved strong growth in China by investing significant energy and resources in developing a strong distribution operation in China; navigating the process for licensing products in the Chinese market; developing strong supplier and manufacturing relationships; recruiting, training, and retaining a strong group of independent

Marketing Executives; and developing a loyal consumer base that has created strong demand for Melaleuca's high-quality products. *Id.* ¶¶ 6, 8.

The relationship between Melaleuca's key corporate executives and independent Marketing Executives is crucial to Melaleuca's growth and success, and thus Melaleuca invests significant resources into building those relationships. *Id.* ¶ 23. Because of the power and influence Melaleuca's corporate leaders obtain, they become valuable targets for Melaleuca's competitors. *Id.* ¶ 24. Indeed, unscrupulous direct selling companies often wish to exploit a leader's status and relationships by hiring the leader away from Melaleuca and using him to entice independent Marketing Executives to follow. *Id.* This vulnerability is exactly why Melaleuca asks its key employees to sign non-compete and confidentiality agreements to protect against unfair competition and unlawful disclosure of its confidential information. *Id.* ¶ 25.

### A.    Kot's Employment with Melaleuca

#### 1.    Kot's 2010 Agreements with Melaleuca

In 2010, Melaleuca hired Kot as a senior sales officer in its Malaysia operation. *Id.* ¶ 11. That year , Kot signed two agreements—the Key Employee Non-Interference and Non-Competition Agreement (the " 2010 Non-Competition Agreement") and the Confidentiality and Non-Solicitation Agreement (the "2010 Confidentiality Agreement")—in which he acknowledged that, in light of his status as a key employee of Melaleuca, the close relationships he would form with Marketing Executives, and his access to highly confidential information, he would be subject to certain restrictions in the event that he left his employment with Melaleuca. *See id.* ¶¶ 30-31; Exs. C, D. Among these restrictions was a non-compete: for 12 months after leaving Melaleuca, Kot was prohibited from engaging in certain activities with direct competitors of Melaleuca—including Shaklee, which is specifically identified in the agreement—including promoting or speaking on behalf of the competitor, speaking to Melaleuca

employees or independent sales representatives, or holding himself out as a former Melaleuca employee. *See id.*, Ex C.  Moreover, to protect against the poaching of independent Marketing Executives, the agreements prohibit Kot from soliciting, recruiting, or interacting with Melaleuca Marketing Executives for 12 months. *See id.*, Ex D.

### 2. Kot's 2011 Agreements with Melaleuca China

In 2011, Melaleuca promoted Kot to Assistant General Manager of Melaleuca China, and, later that year, to General Manager of Melaleuca China. *Id.* ¶ 12.  In light of Kot's new role, and in order to protect Melaleuca's competitive interests under Chinese law, Melaleuca China and Kot entered into a "China Key Employee Non-Interference and Non-Competition Agreement" (the "2011 Non-Competition Agreement") and a "China Confidentiality and Non-Solicitation Agreement" (the "2011 Confidentiality Agreement"). *See id.*, Exs. E, F.  Melaleuca, Inc. is not a party to these agreements. *See id.*

The 2011 agreements contain an 18 month non-competition provision, and prohibit Kot from soliciting Melaleuca employees for two years following his termination.  The 2011 agreements provide for the "*non-exclusive* jurisdiction of the Courts of the People's Republic of China." *See id.*, Ex. E § II(a), Ex. F § 6(a).  In other words, the 2011 China agreements can be enforced outside of China.

### B. Kot Leaves Melaleuca, Lies About His Intentions, and Joins Shaklee

In late 2017, Kot informed Melaleuca that he was leaving the company to pursue non-competitive opportunities in Hong Kong.  Felton Decl. ¶ 38.  Kot's supervisor, Melaleuca's President of International (a Melaleuca, Inc. employee), raised the possibility of Kot staying with Melaleuca in a reduced role in Hong Kong, but Kot declined, stating that he wanted to work in ventures related to bridal and car businesses. *Id.*  Because of Kot's status among Marketing Executives and his access to confidential information relating to Melaleuca's business and

growth in the Chinese market, Melaleuca reminded Kot of his agreements and sought Kot's assurance that he would comply with his obligations. *Id.* ¶ 40. Kot assured Melaleuca that he was aware of his obligations, had the contracts in his possession, and would fully comply with them. *Id.* That was a lie.

Just weeks after leaving the company, and with nearly the entire restricted periods remaining on his non-compete agreements, Kot interviewed with Shaklee and was hired by Shaklee's CEO to serve as the head of Shaklee's China operation. Kot Decl., Dkt. No. 6-2, ¶¶ 6-7. Kot immediately began engaging in the very conduct that is directly prohibited under his non-competes with Melaleuca and Melaleuca China. *See* Felton Decl. ¶¶ 41-42. Indisputable evidence demonstrates that Kot has met with Shaklee employees and sales representatives. He has represented himself as a former Melaleuca employee, and he has shared confidential Melaleuca information, including at a minimum Melaleuca's financial performance in China. *Id.* ¶¶ 41. And Kot has recently contacted multiple Melaleuca representatives—a clear attempt to benefit Shaklee and harm Melaleuca by raiding its valued independent sales representatives who have helped drive Melaleuca's tremendous growth in China. *Id.* ¶ 47.

None of this conduct—which flies in the face of Kot's contractual obligations—could have been accomplished without the active participation and knowing inducement by Shaklee to have Kot breach his agreements. Indeed, in an attempt to resolve this matter short of litigation, Melaleuca reached out to a senior Shaklee representative for confirmation that Shaklee had not hired Kot, given his non-compete obligations to Melaleuca. The Shaklee representative consistently and repeatedly denied that Shaklee had interviewed or hired Kot. That, too, was a lie. When Kot finally acknowledge to Melaleuca that he had in fact taken a job at Shaklee, Shaklee was forced to admit the same. But rather than express regret for its misdeeds, Shaklee

admitted that it was aware of Kot's non-compete obligations, but hired him anyway.

## II.   LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs the issuance a preliminary injunction.  A court may issue preliminary injunctions to enforce covenants not-to-compete and other provisions included in employment agreements.  *See, e.g.*, *Ocean Beauty Seafoods, LLC v. Pacific Seafood Group Acquisition Co., Inc.*, 648 Fed. Appx. 709 (9th Cir. 2016); *MWI Veterinary Supply Co. v. Wotton*, 896 F.Supp.2d 905 (D. Idaho 2012).

A preliminary injunction may be granted where the moving party establishes that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *MWI*, 896 F.Supp.2d at 910.  Plaintiffs have satisfied each of the required elements.

## III.   ARGUMENT

### A.   Plaintiffs Are Likely To Succeed On The Merits Of Their Breach Of Contract Claims

Melaleuca is likely to succeed on its claims that Kot breached and continues to breach the 2010 Non-Compete and Confidentiality Agreements, with Shaklee's active encouragement and participation.  Under Idaho law[1], a breach of contract is established by: "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages."  *Mosell Equities, LLC v. Berryhill & Co.*, 297 P.3d 232, 241 (2013); *Ridenour v. Bank of America, N.A.*, 23 F.Supp.3d 1201, 1207 (D. Idaho 2014).

If the Court determines that the 2011 agreements apply, Plaintiffs are likely to succeed on

---

[1]  Mr. Kot and Melaleuca, Inc. agreed that any dispute arising out of the 2010 Non-Competition or Confidentiality Agreements is governed by Idaho law.  Felton Decl. Ex. C § II(A)(1); Ex. D § 6(a).

their claims that Kot breached those agreements.  Kot's 2011 agreements are governed by

Chinese law, which this Court is authorized to apply under Federal Rule of Civil Procedure

44.1.[2]  Chinese contract law, which is governed by the Uniform Contract Law of the People's

Republic of China, requires only "one element" to constitute breach: "If any of the facts proving

the non-compliance in performing the contract exist, the contract breaker shall be liable for the

loss or compensation regardless of any subject faults."[3]  § 4:65. Liabilities for breach of

contract—"One element" theory.

### 1.    Indisputable Evidence Shows Kot's Breach of His 2010 Agreements

The 2010 Non-Competition Agreement recognizes that Kot is a "key employee," and

imposes restrictions on Kot's ability to engage in certain conduct on behalf of direct competitors

of Melaleuca, many of which (including Shaklee) are specifically enumerated in the non-

compete.  Felton Decl., Ex. C, § Recitals, C.  Specifically, for a 12-month period following his

employment with Melaleuca, Kot is prohibited from doing the following:

- "promoting or speaking on behalf of the compensation plan or products of [Shaklee]," Felton Decl., Ex. C § I(C)(i)(1);

- "advising or speaking to [Shaklee's] independent business owners or sales representatives who serve the same or similar function as [Melaleuca's] Marketing Executives . . . whether on stage, in any public forum, in phone calls, via video presentations, in print, or in any other manner," *Id.* § I(C)(i)(2);

---

[2]  If the Court determines that the 2011 agreements apply, the Court has jurisdiction over Melaleuca's claims because Mr. Kot's 2011 agreements provide for the "*non-exclusive* jurisdiction of the Courts of the People's Republic of China," and Mr. Kot had numerous and frequent contacts with the State of Idaho.  For example, between 2010 and 2017, in conjunction with travel to the United States for an annual convention, Mr. Kot visited Melaleuca's headquarters in Idaho Falls for training events and to strengthen his relationships with Melaleuca executives.  Felton Decl. ¶ 16.  Melaleuca also hosted Mr. Kot in other locations in Idaho on at least seven other occasions—totaling dozens of days—during this period.  *Id.*  For example, last June, Mr. Kot joined Melaleuca executives for a two-day event in Island Park, Idaho, and Idaho Falls.  *Id.*

[3]  "Article 107 of the UCL sets out the general rule on liability for breaches, stating that 'if a party fails to perform its obligations under a contract, or rendered non-conforming performance, it shall bear the liabilities for breach of contract by specific performance, cure of the non-conforming performance or payment of damages.'"  John H. Matheson, *Convergence, Culture and Contract Law in China*, 15 Minn. J. Int'l L. 329, 356 (2006); *see also Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1331 (S.D. Fla. 2016), appeal dismissed (May 9, 2016) ("Contract Law of the People's Republic of China both recognizes claims for breach of contract and provides for damages.")

---

- "holding himself out as formerly employed by [Melaleuca]" or allowing Shaklee to make "any public announcements about [his] employment," *Id.* § I(C)(i)(3);

- "knowingly contacting or speaking with" Melaleuca's Marketing Executives and certain Melaleuca customers, *Id.* § I(C)(i)(4);

- having any "contact with [Shaklee's] Sales Representatives" located in any area where Melaleuca conducts business, including China, *Id.* § I(C)(ii); and

- "allow[ing his] name or likeness to be used in any way to promote any company or product that competes with products" of Melaleuca, *Id.* § I(H);

The 2010 Confidentiality Agreement prohibits Kot from sharing certain identified categories of Melaleuca confidential and proprietary information, including "any information or data regarding the Company's financial affairs, including but not limited to sales volumes, income, expenses, profit margins, assets, liabilities and taxes." Felton Decl., Ex. D § 2(a)(ix). The confidentiality agreement also prohibits Kot from soliciting or recruiting Melaleuca employees for a period of two years after leaving Melaleuca. *Id.* § 4.

Here, Kot breached each of these provisions. Through his role as president of Shaklee's China operations, Kot is promoting Shaklee's business and interacting with Shaklee's sales personnel, a direction violation of Section I(C)(i)-(ii) of the Non-Competition Agreement. Further, Melaleuca has obtained indisputable photographic evidence showing Kot meeting with Shaklee employees and sales representatives, another direct violation of Section I(C)(i)-(ii). *See* Am. Compl., Dkt. No. 39, ¶¶ 53-56; Felton Decl., Exs. C, G. The caption to one of these pictures also reveals that Kot's former position with Melaleuca was disclosed at one of these meetings, which violates Kot's obligation not to "hold[] himself out as formerly employed by Melaleuca" under Section I(C)(i)(3) of the Non-Competition Agreement. *See* Am. Compl., Dkt. No. 39, ¶ 56. Moreover, Kot's presence at Shaklee events also violated Section I(H), which requires Kot not to "allow [his] name or likeness" to promote Shaklee's products. Felton Decl., Ex. C. Kot also has allowed Shaklee to publicly announce his appointment, yet another

violation. *Id.* § I(C)(i)(3).

These social media posts also reveal that Kot disclosed Melaleuca's confidential financial information at the Shaklee event. *See* Felton Decl. ¶ 41; Am. Compl., Dkt. No. 39, ¶ 56. Specifically, the translated caption to one of the photos states: "The newly employed president, Nelson Kot [AKA Kot Nam Shan], was the president of Melaleuca. He made Melaleuca [OMITTED] RMB company in seven years." Am. Compl., Dkt. No. 39, ¶ 56. Melaleuca's financial performance in China is confidential, non-public data. This data could only have come from Kot, and his disclosure of this protected financial information is a plain violation of Section 2(a)(ix) of the Confidentiality Agreement.

Kot has also recently reached out to Melaleuca's Marketing Executives on at least two occasions, including one meeting between Kot and a Marketing Executive that occurred barely a month ago. Felton Decl. ¶ 47. These contacts violate section I(C)(i) of the 2010 Non-Competition Agreement, which prohibits Kot from "contacting or speaking with" Melaleuca's Marketing Executives. *See id.*, Ex. C.

Section I(E) of the 2010 Non-Compete Agreement also imposed on Kot an obligation to "immediately notify [Melaleuca] each time [Kot] is contacted by or on behalf of a Competing Company [including Shaklee] for the purpose of soliciting or enticing [Kot] to work for such Competing Company." *Id.* Given the timing of his hiring by Shaklee, it is inconceivable that Kot and Shaklee did not discuss Kot's potential employment with Shaklee while Kot was still employed by Melaleuca. Kot never disclosed contacts with Shaklee to Melaleuca—yet another violation of the 2010 Non-Competition Agreement.

### 2.    The 2010 Agreements Are Valid and Enforceable

#### a)    The 2010 Agreements Between Kot and Melaleuca, Inc. Have Not Been Superseded By The 2011 Agreements

Kot's 2010 agreements are valid contracts that continue in force.  Defendants have taken the position that Kot is no longer bound by the 2010 agreements, and instead claim that his sole contractual relationship with Melaleuca is governed by separate agreements that Kot entered into with Melaleuca China in 2011, which Defendants say supersede the 2010 agreements.  Shaklee Opp to TRO, Dkt. No. 28 at 1, 8-9.  Defendants are wrong.

*First*, the 2011 agreements cannot supersede the 2010 agreements because they are between Kot and *a different party*.  Whereas the 2010 agreements are between Kot and Melaleuca, Inc., the 2011 agreements are between Kot and Melaleuca's China subsidiary.  Both the 2011 Non-Competition Agreement and the 2011 Confidentiality Agreement state at the outset that they are between "the two parties listed hereunder": "Party A . . . Melaleuca (China)," and "Party B . . . Nelson Kot," and both agreements are executed by Melaleuca (China).  The law is clear that agreement made by a subsidiary does not bind a parent.[4]  Because Melaleuca China cannot bind Melaleuca, Inc., the 2010 agreements survive.

*Second*, the plain language of the contracts is clear that the 2011 agreements do not supersede prior agreements between Kot and Melaleuca, Inc.  The "Entire Agreement" clause in the 2010 agreements states, "No modification of or amendment to this Agreement, or any waiver of any rights under this Agreement, will be effective *unless in a writing signed by both parties*."  Felton Decl., Ex. C §2(B); *see also* Ex. D §6(b) (agreement "may be modified only in writing signed by *Melaleuca* and the Employee") (emphasis added).  The 2011 agreements are signed by

---

[4]  *See Malch v. Dolan*, 2016 WL 4925161, at *3 (C.D. Cal. Sept. 13, 2016) ("Because, Plaintiff argues, NFCal is a subsidiary and affiliate of NFHC, and NFHC is a signatory to a contract, NFCal is therefore also bound by the contract. Plaintiff cites no authority, however, for her theory that signatories to a contract can bind independent third parties simply by so stating"); *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 127 (D. Del. 2000) ("This court is not willing to use 'traditional principles of contract and agency law' to circumvent the protections of the corporate form and bind a corporate parent to contracts made by its subsidiary."); *Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 163 (1980) ("Parent and subsidiary entities are generally considered and treated as separate legal entities, so that the contract of one does not bind the other.").

Melaleuca China, *not* Melaleuca, Inc.  **On this basis alone, the 2011 agreements could not have superseded the 2010 agreements.**  Moreover, whereas the "Entire Agreement" clause contained the 2010 Non-Competition Agreement specifically states that the agreement "*supersedes all prior understandings and agreements* with respect to the subject matter covered by this Agreement," the same provision in the 2011 agreement is conclusively silent on this point— meaning no "superseding" language**.**  *See* Felton Decl., Ex. C § II(B); Ex E § II(B).

*Third*, it was, and remains, Melaleuca's intent to have two sets of agreements that exist in parallel.  *See* Felton Dec. ¶ 37.  "The primary objective in construing a contract is to discover the intent of the parties."  *Bondy v. Levy*, 121 Idaho 993, 996 (1992).  It is no accident that the 2011 agreements lack the superseding provision of the 2010 agreements.  The two sets of agreements were designed to coexist.  Melaleuca, Inc. anticipated that Kot would move within the "Melaleuca group companies."  Felton Dec. ¶ 37.  Melaleuca's intent is reflected in the 2010 agreements, which provide that "[a]ny subsequent change or changes in [Kot's] duties, salary or compensation will not affect the validity or scope" of the agreements.   Felton Decl., Ex C § II(B); Ex D § 6(b).  In light of Melaleuca, Inc.'s heavy investment in its "key employee," the 2010 agreements were necessary to enable Melaleuca to protect its competitive interests and to enforce its rights in the United States, notwithstanding Kot's anticipated mobility within the Melaleuca group.  Felton Dec. ¶ 33.

### b) The 2010 Agreements Had Adequate Consideration And Have Not Lapsed

Defendants have contended that Kot's 2010 agreements are not binding because Kot, having begun his employment with Melaleuca Malaysia, did not receive adequate consideration for agreements executed with Melaleuca, Inc.  In the alternative, Defendants have argued that if the 2010 agreements with Melaleuca, Inc. were valid, Kot's obligations to the parent company

expired in the several years since Kot began working for Melaleuca China.  Underlying both of these arguments is the false premise that Kot cannot be jointly employed by Melaleuca, Inc. and its subsidiaries.

Courts have routinely held that a parent corporation can be a "joint employer" of its subsidiary's employees.  *See, e.g.*, *Castaneda v. Ensign Grp., Inc.*, 229 Cal. App. 4th 1015, 1020 (2014) (finding that a parent company jointly employed its subsidiary's employees because the parent "had exercised control over [the subsidiary's] operations and its employees."); *Zachary v. Rescare Oklahoma, Inc.*, 471 F. Supp. 2d 1175 (N.D. Okla. 2006) (parent and subsidiary were joint employers where they "share decision-making authority over at least some employment conditions" and "function as one unit in making at least some employment decisions"); *McLaughlin v. Intrepid Holdings, Inc.*, 2009 WL 2900741 (S.D. Tex. Sept. 2, 2009) (parent and subsidiary were joint employers in part because "all assets were under the sole management and operating structure" of the parent).  To determine whether a parent and a subsidiary are a joint employer, "courts looks to the 'economic reality' behind the relationship."  *Lane v. Humana Marketpoint, Inc.*, 2010 WL 11561188, at *2 (D. Idaho May 5, 2010) (citing *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).  Courts employ a "totality of the circumstances" approach, and "typically consider four factors: 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment and (4) maintained employment records.'"  *Id.*

Melaleuca, Inc. and Melaleuca China are clearly "joint employers."  *First*, Melaleuca, Inc. has complete control of its China subsidiary, including over its key employment decisions. Felton Decl. at ¶ 13.  For instance, Melaleuca, Inc. interviews candidates for its international

subsidiaries, makes hiring and compensation decisions, and places or moves key employees in subsidiaries around the world based on where Melaleuca, Inc. thinks they will be most effective. *Id.* at ¶ 13.  Melaleuca, Inc. also has the power to modify employee relationships within its subsidiaries.  *Id.* at ¶ 12.  *Second*, Melaleuca controls the employment conditions of its subsidiary employees.  For instance, Melaleuca, Inc. monitors and controls how services are rendered across the globe so that Melaleuca customers always have a consistent experience.  *Id.* ¶ 5.  Melaleuca also directs the development of its subsidiaries' standardized policies, forms, and other information that affect employee experience.  *Id.* ¶ 13.  *Third*, Melaleuca, Inc. makes decisions about the rate and method of payment for employees of its affiliates and subsidiaries. Notably, Melaleuca, Inc. determined Kot's compensation, including the amount of his bonuses, which varied depending on his performance in China and global factors affecting Melaleuca group companies worldwide.  *Id.* ¶ 14.  *Fourth*, Melaleuca maintains records of key employees assigned to work in international subsidiaries.  *Id.* ¶ 5.

Thus, because Melaleuca, Inc. was a joint employer of Kot (and, indeed, because Kot reported directly to a senior officer of Melaleuca, Inc. until he left the Company), there was adequate consideration for Kot's 2010 agreements.  *See Gress v. Conover Ins., Inc.*, 494 F. App'x 772, 774 (9th Cir. 2012) (affirming that "noncompetition clause was enforceable and binding" where former employee "signed an employment agreement at the time of his initial hiring that included a noncompetition clause"); *Nestle Food Co. v. Miller*, 836 F. Supp. 69, 77 (D.R.I. 1993) ("Even if there was no consideration [for non-compete and confidentiality covenants] other than allowing [former employee] to continue as an employee with all of the associated benefits associated therewith, such continuation of employment constitutes adequate consideration."); *Ins. Assocs. Corp. v. Hansen*, 111 Idaho 206, 207 (Ct. App. 1986)

(confidentiality agreement was supported by consideration where signing the agreement allowed the employee to continue his employment).

### 3. Melaleuca Is Likely To Succeed On The Merits Even If The Court Determines That The 2011 Agreements Control

If the Court determines that only the 2011 agreements are enforceable, indisputable evidence shows that Kot has breached those agreements as well. The 2011 Non-Competition Agreement recognizes that Kot is a "key employee," and imposes restrictions on Kot's ability to engage in certain conduct on behalf of direct competitors of Melaleuca, many of which (including Shaklee) are specifically enumerated in the non-competes. Felton Decl., Ex. C, § Recitals, C. Specifically, for an 18-month period after leaving his employment, Kot is subject to the similar restrictions under his 2011 non-compete as the 2010 non-compete. *See* Am. Compl., Dkt. No. 39, ¶ 41; section I.A.1 *supra*.

The 2011 Confidentiality Agreement prohibits Kot from sharing certain identified categories of Melaleuca confidential and proprietary information, including "any information or data regarding the Company's financial affairs, including but not limited to sales volumes, income, expenses, profit margins, assets, liabilities and taxes." Felton Decl., Ex. F § 2(a)(ix). The 2011 Confidentiality Agreement also prohibits Kot from soliciting or recruiting Melaleuca employees for a period of two years after leaving Melaleuca. *Id.* § 4. For all the reasons explained in section I.A.1, *supra*, Kot has engaged in conduct that indisputably breaches the obligations in his 2011 agreements.

Nor can Kot avoid his obligations by claiming that Melaleuca and/or Melaleuca China failed to pay Kot under the terms of the 2011 Non-Competition Agreement. That agreement provides that Melaleuca China may, at its election, choose to hold Kot to his non-compete by paying him "monthly base compensation." It has always been Melaleuca's intent to hold Kot to

his non-competition obligations.  Felton Decl. ¶ 38.  Indeed, as he was leaving the Company,

Kot's supervisor specifically told him that he needed to abide by his non-compete.  *Id.* ¶ 40.

Only as a result of Kot's lies and deception about his reason for leaving Melaleuca and desire to

leave the industry, devote himself to a car and wedding business, and his lack of interest in

working for Shaklee, did Melaleuca not make additional payments to Kot.  *Id.*  ¶ 38.

Kot cannot escape his obligations under the 2011 Non-Competition Agreement through

his own unclean hands and inequitable conduct.  *See Ellenburg v. Brockway, Inc.*, 763 F.2d

1091, 1097 (9th Cir. 1985) (party's unclean hands "closes the doors of a court of equity to one

tainted with inequitableness or bad faith") (quoting *Precision Inst. Mfg. Co. v. Auto. Maint.

Mach. Co.*, 324 U.S. 806, 814 (1945)); *see also Republic Molding Corp. v. B.W. Photo Utilities*,

319 F.2d 347, 349 (9th Cir. 1963) ("[w]hat is material is not that [a party's] hands are dirty, but

that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders

inequitable the assertion of such rights.").  Insofar as Kot asserts that he has the right to engage

in conduct covered by his 2011 Non-Competition Agreement based on Melaleuca's failure to

pay him, Kot's lies and unclean hands must trump this argument.  In any event, there is no

payment provision in the 2011 Confidentiality Agreement, which Kot also has clearly breached

by disclosing Melaleuca's confidential information in violation of section 2(a)(ix).

### B.   Plaintiffs Are Likely To Succeed On Their Fraud Claim Against Kot

If the Court determines that the 2011 agreements are the operative agreements, Plaintiffs

also are likely to succeed on their claims that Kot fraudulently induced Plaintiffs not to pay him

"monthly base compensation" under the 2011 Non-Compete Agreement.  *See* 37 C.J.S. Fraud §

71 ("Where a person by false and fraudulent representations or conduct . . . induces another not

to perform a contract, and thereby injures the other party to the contract, the latter may maintain

an action to recover damages for the fraud.").  Under Idaho law, the elements of fraud are: "(1) a

representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by person and in manner reasonably contemplated; (6) hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Faw v. Greenwood*, 101 Idaho 387 (1980).

Kot repeatedly lied to Melaleuca about his intention to work for Shaklee—or for anyone else in the industry—and falsely represented that he would only work on his private businesses. Felton Dec. ¶ 38.  Melaleuca relied on Kot's material misrepresentations by not paying Kot during the non-compete period.  *Id.*  As he intended all along, and to Melaleuca's detriment, Kot began working for Shaklee, one of Melaleuca's direct competitors, almost immediately after leaving Melaleuca.  *Id.* ¶ 40. Melaleuca has been injured as a result of Kot's fraudulent inducement since he is now working at Shaklee.  *Id.* ¶¶ 44-49.  This is textbook fraudulent inducement.

### C.    Melaleuca Is Likely To Succeed On Its Claims That Shaklee Tortiously Interfered with Kot's Contracts With Plaintiffs

Under Idaho law, a claim for tortious interference with contract is established by showing: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach.  *Bybee v. Isaac*, 178 P.3d 616 (2008); *Gibson v. Credit Suisse AG*, 787 F.Supp.2d 1123, 1138 (D. Idaho 2011).

Plaintiffs have satisfied these elements.  Shaklee's General Counsel confirmed that Shaklee hired Kot with full knowledge that he was subject to non-competition agreements with Melaleuca.  Nelson Decl., Ex. A ¶ 16-17.  Shaklee, in other words, not only knew of Kot's breach—it unlawfully induced and facilitated the breach in order to steal a senior officer from a

direct competitor.  Furthermore, by telling Kot to wait six weeks before beginning his

employment at Shaklee, Shaklee facilitated Kot's breaches by keeping their employment scheme

under wraps for the purpose of not cuing to Melaleuca that it should pay Kot under the 2011

Non-Competition Agreement.  *See,* Nelson Decl. ¶ 4-5.  This scheme even involved Shaklee's

General Counsel lying to a Shaklee Board member and former General Counsel about Shaklee's

interest in Kot, who then falsely told Melaleuca that Shaklee had not interviewed and was not

interested in hiring Kot.  *Id.*, Ex. A ¶¶ 10, 14.  Shaklee further tortiously interfered with Kot's

contracts when Shaklee's Chief Executive Officer, Roger Barnett, personally interviewed Kot,

hired Kot, then flew to China to announce Kot's hiring—all in direct violation of Kot's

agreements with Plaintiffs, which at a minimum prohibit Kot from allowing Shaklee to make

such public announcements.  Felton Decl. ¶ 42; Am. Compl., Dkt. No. 39, ¶ 53.  Finally, by

featuring Kot in a Shaklee event involving Shaklee employees and sales personnel, and by

disseminating Melaleuca confidential information held by Kot at that event, Shaklee willfully

interfered with, and induced Kot to breach, the 2010 and 2011 Non-Competition and

Confidentiality Agreements.  Am. Compl., Dkt. No. 39, ¶¶ 52-55.

### D. Plaintiffs Will Suffer Irreparable Harm if the Court Does Not Grant a Preliminary Injunction

It is widely recognized that the breach of a non-compete agreement gives rise to

irreparable injury that can only be remedied through injunctive relief.  In *Ocean Beauty*

*Seafoods, LLC v. Pacific Seafood Group Acquisition Co., Inc.*, 648 Fed. Appx. 709, 710 (9th Cir.

2016), the Ninth Circuit found that irreparable harm would result if a former employee bound by

a non-compete were not enjoined from accepting employment with a competitor.  The court

explained that "[a]n enforceable noncompete agreement affords fair protection to a legitimate

interest of the former employer. . . .  Because the harm resulting from the breach of such an

agreement is intangible and difficult to quantify, it qualifies as irreparable." *Id.* at 711.  In line

with this analysis, Idaho Code § 44-2704—which establishes a rebuttable presumption of

irreparable harm where a key employee such as Kot breaches his non-compete agreement—

further confirms that Kot's breaches, and Shaklee's inducement and facilitation of those

breaches, will cause irreparable harm to Plaintiffs.

Moreover, irreparable harm is presumed where the parties have agreed that a contractual

breach necessarily results in such harm.  *See MWI*, 896 F. Supp. 2d at 914 (finding irreparable

harm because the parties agreed that "any breach of the non-compete clause would cause

irreparable harm").  Kot agreed in the 2010 and 2011 Non-Compete Agreements that any

violation of the agreement by Kot would cause "substantial, immediate and irreparable harm."

Felton Decl., Ex C § II(A)(3)(b); Ex. E § II(A)(2)(b).  The parties further agreed that "there is no

adequate remedy at law" for such breaches.  *Id.*  Kot further agreed in the 2010 agreement that,

in the event Melaleuca brings an action seeking such relief, he will not "defend such action on

the basis that [Melaleuca] has an adequate remedy at law."  Felton Decl., Ex. C § II(A)(3)(b).

Similarly, the parties in the 2010 and 2011 Confidentiality Agreements that any disclosure of

Melaleuca's confidential information by Kot in violation of the agreement "may result in

irreparable damages to" Melaleuca.  Felton Decl., Ex. D § 2(e); Ex. F § 2(e).

In addition, plaintiffs will suffer irreparable harm absent an injunction because of the

damages that Kot and Shaklee can inflict on Melaleuca's goodwill and reputation.  *See Rent-A-*

*Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)

("intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as

irreparable harm"); *MWI*, F.Supp.2d at 914 (damages to "business goodwill," including "a

company's reputation," can constitute irreparable harm).  Kot is uniquely positioned to exploit

his relationships with Melaleuca's Marketing Executives to entice them to jump ship for Shaklee, which Kot has already commenced by contacting multiple Marketing Executives in the short time since he left Melaleuca.  *Id*. ¶ 47-48.  In addition to depleting Melaleuca's workforce, such "raiding" of Melaleuca's Marketing Executives damages employee morale and productivity, and inevitably causes irreparable harm that cannot be remedied with damages.  *Id*. ¶ 26-29.

Furthermore, Melaleuca is likely to suffer irreparable harm because of "Kot's possession and likely use, in concert with Shaklee, of highly sensitive confidential information of Melaleuca by virtue of his senior position."  Order Extending TRO, Dkt. No. 20 at 1; *see also Ocean Beauty Seafoods, LLC v. Pac. Seafood Gp. Acquisition Co.*, 648 Fed. App'x. 709, 711 (9th Cir. 2016) (preliminary injunction is appropriate where there is a "substantial risk" that a former employee "could use proprietary information he acquired at [his former employer] to divert all or part of the employer's business") (internal quotations omitted).  Kot's intimate knowledge of Melaleuca's confidential and proprietary information includes: Melaleuca's product licensing and regulatory strategy in China; the mechanics of Melaleuca's complex Chinese distribution model; Melaleuca's commercial relationships with third-party suppliers in China; Melaleuca's confidential and highly sensitive product pricing information; and Melaleuca's marketing, recruitment and training programs for its Marketing Executives.  *Id.* ¶ 18.  That Kot already has divulged confidential information concerning Melaleuca's financial performance in China highlights the imminence of this harm.

### E.     The Balance of the Equities Tips in Melaleuca's Favor

The court must also consider where "the balance of equities tips."  *Winter*, 555 U.S. at 20.  For Shaklee, an injunction would merely return the parties to the status quo before Kot began working for Melaleuca's direct competitor in violation of his non-compete, and before Kot began breaching his confidentiality and non-solicitation obligations to his former employer.  The

injunction would in no way prevent Shaklee from competing with Melaleuca in China.

Although an injunction would pause Kot's employment with Shaklee pending trial, any hardship caused by such an injunction was anticipated when Kot signed his agreements.  In *MWI*, 896 F.Supp.2d at 914, the court considered an injunction that would force the defendant out of business.  Despite this "substantial hardship," the court found that the balance tipped in favor of the plaintiff, because, absent an injunction, plaintiff would be denied the benefit of his bargain.  *Id.*  The court reasoned, the defendant's "own foresight takes most of the sting out of an injunction that forces them to comply with their agreements."  *Id.*  If no preliminary injunction is issued, Plaintiffs would be denied the benefit of their bargain, and suffer as a result of a former senior officer, with substantial knowledge of Melaleuca's operations and confidential information, exploiting his position and his knowledge of Melaleuca's confidential information with a direct competitor.  Felton Decl. ¶ 49.  The harm that Plaintiffs would suffer under these circumstances far exceeds any corresponding harm to Shaklee and Kot resulting from a short pause to Kot's employment with Shaklee.

### F.    A Preliminary Injunction Is In The Public Interest

"The public interest inquiry primarily addresses [the] impact on non-parties rather than parties."  *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002).  When evaluating preliminary injunction in the context of breach of contract, Idaho courts have been clear that "[t]he public interest lies in enforcing contractual agreements."  *MWI*, 896 F.Supp.2d at 914 (D. Idaho 2012).  When a breach is as flagrant as it is here, the public's interest clearly lies in a preliminary injunction.

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in its Complaint, Melaleuca respectfully requests that the Court enter the proposed preliminary injunction.

DATED:  February 20, 2018

THOMSEN HOLMAN WHEILER, PLLC

By:  */s/ Richard R. Friess*
      Richard R. Friess
      THOMSEN HOLMAN WHEILER, PLLC
      2635 Channing Way
      Idaho Falls, ID  83404
      Telephone: (208) 522-1230
      Fax: (208) 522-1277

      *Of counsel:*

      Brian M. Lutz (admitted *pro hac vice*)
      blutz@gibsondunn.com
      GIBSON DUNN & CRUTCHER LLP
      555 Mission Street, Suite 3000
      San Francisco, CA 94105-0921
      Telephone: (415) 393-8200
      Fax: (415) 393-8306

      Stephen C. Whittaker (admitted *pro hac vice*)
      cwhittaker@gibsondunn.com
      GIBSON, DUNN & CRUTCHER LLP
      3161 Michelson Drive
      Irvine, CA 92612-4412
      Telephone: (949) 451-3800
      Fax:  (949) 451-4220

      Attorneys for Plaintiff