HOPKINS RODEN CROCKETT
  HANSEN & HOOPES, PLLC
Sean J. Coletti, ISBN 7199
428 Park Avenue
Idaho Falls, Idaho  83402
Telephone:  208-523-4445
Facsimile:  208-523-4474
seancoletti@hopkinsroden.com
Attorneys for Defendant Kot Nam Shan

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation, and MELALEUCA (CHINA) WELLNESS PRODUCTS CO., LTD., a wholly-owned subsidiary of Melaleuca, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> KOT NAM SHAN, an individual, and SHAKLEE CORP., a Delaware corporation, <br><br> Defendants. | Case No. 4:18-cv-00036-DCN <br><br> MEMORANDUM IN SUPPORT OF DEFENDANT KOT NAM SHAN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT |

MEMORANDUM IN SUPPORT OF DEFENDANT KOT NAM SHAN'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   RELEVANT FACTS ............................................................................ 4

    A.    Mr. Kot Has Lived and Worked His Entire Life in Asia .............................. 4

    B.    Melaleuca, Inc. Was Never Mr. Kot's Employer ........................................ 4

    C.    Mr. Kot Had Limited Contacts with Idaho ................................................. 7

    D.    Melaleuca (China) Had Every Opportunity to Make the 2011 Agreements' Non-Compete Provision Enforceable, but Decided Not to Take It ...................................................................................................... 7

    E.    Plaintiffs' Accusations that Mr. Kot Violated His Non-Solicitation and Confidentiality Obligations Are Baseless .................................................. 8

III.  ARGUMENT ...................................................................................... 8

    A.    No Personal Jurisdiction over Mr. Kot Exists ............................................ 8

        1.    Mr. Kot Never Consented to Jurisdiction in Idaho for His Work in China ............................................................................................ 9

            a.    The 2011 Agreements Supersede the 2010 Agreements ................................................................................ 10

            b.    The 2010 Agreements' Non-Compete Provision Was Not Enforceable, and in Any Case, the 2010 Agreements Were Never Binding ...................................... 12

            c.    Even If the 2010 Agreements Were Binding, They Expired by Their Own Terms ............................................. 13

        2.    No Specific Jurisdiction over Mr. Kot Exists ................................. 14

            a.    There Has Been No Purposeful Availment ......................... 15

            b.    Plaintiffs' Claims Relate to Mr. Kot's Activities in China, Not in Idaho ............................................................ 16

            c.    It Would Be Unreasonable to Exercise Jurisdiction over Mr. Kot in Idaho ........................................................ 16

    B.    Regardless of the Forum, This Action Should Not Move Forward Without Indispensable Party Shaklee (China) Co. Ltd ........................... 17

    C.    This Action Should Be Dismissed for *Forum Non Conveniens* ............... 18

    D.    Mr. Kot Has Still Not Been Properly Served ............................................ 19

IV.   CONCLUSION .................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bonnette v. Cal. Health and Welfare Agency*,
   704 F.2d 1465 (9th Cir. 1983), *abrogated on other grounds by Garcia
   v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985) ....................................... 13

*Bristol-Myers Squibb Co. v. Superior Court of Cal, S.F. Cnty.*,
   137 S. Ct. 1773 (2017) ................................................................................... 14, 16

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) ................................................................................ 19

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................. 15

*CE Distrib., LLC v. New Sensor Corp.*,
   380 F.3d 1107 (9th Cir. 2004) ................................................................................ 17

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
   61 F.3d 696 (9th Cir. 1995) ................................................................................... 19

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ................................................................................ 15

*Foster v. Johnstone*,
   107 Idaho 61 (1984) .............................................................................................. 10

*Goodyear Dunlop Tires Operation, S.A. v. Brown*,
   564 U.S. 915 (2011) .............................................................................................. 14

*HCT Packaging v. TM Int'l Trading Ltd.*,
   No. CV 13-08443 RGK, 2014 WL 12696776 (C.D. Cal. Mar. 10, 2014)................... 20

*Home Casual Enter. Ltd. v. Home Casual, LLC*,
   No. 11-cv-661-wmc, 2012 WL 13042156 (W.D. Wis. Nov. 13, 2012)....................... 20

*Huang v. Advanced Battery Techs., Inc.*,
   No. 09 CV 8279(HB), 2010 WL 2143669 (S.D.N.Y.) ................................................ 19

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   564 U.S. 873 (2011) (plurality opinion)...................................................................... 9

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
   583 F.3d 656 (9th Cir. 2009) ................................................................................. 19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ................................................................... 15

*Morrill v. Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017) ................................................................. 16

*NLRB v. Int'l Union of Operating Eng'rs Local No. 12, AFL-CIO*,
   323 F.2d 545 (9th Cir. 1963) ................................................................... 10

*Peterson v. Kennedy*,
   771 F.2d 1244 (9th Cir. 1985) ................................................................. 15

*Piper Aircraft Co. v. Reynolds*,
   454 U.S. 235 (1981) ................................................................................ 18

*Rhino Metals, Inc. v. Kodiak Safe Co., LLC*,
   No. 1:16-285-EJL-REB, 2017 WL 2903339 (D. Idaho Mar. 5, 2017) ........................ 9

*Ruiz v. Fernandez*,
   949 F. Supp. 1055 (E.D. Wash. 2013) ................................................... 13

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ................................................................... 9

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ................................................................................ 19

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995) ..................................................................... 15

*Thomas v. Thomas*,
   150 Idaho 636 (2011) .............................................................................. 10

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988) ................................................................................ 20

*Weisel v. Beaver Springs Owners Ass'n, Inc.*,
   152 Idaho 519 (2012) .............................................................................. 12

*Wells Cargo, Inc. v. Transp. Ins. Co.*,
   676 F. Supp. 2d 1114 (D. Idaho 2009) .................................................. 9

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) (en banc) .......................................... 9, 15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

STATUTES

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*........................................................ 13

OTHER AUTHORITIES

17A C.J.S. Contracts § 395 (2017) .................................................................................. 11

Fed. R. Civ. P.
  Rule 19 ..........................................................................................................4, 18, 20

## I.   INTRODUCTION

Defendant Kot Nam Shan ("Mr. Kot") files this brief in support of his motion to dismiss the first amended complaint ("FAC") of plaintiffs Melaleuca, Inc. ("Melaleuca, Inc.") and Melaleuca (China) Wellness Products Co., Ltd. ("Melaleuca (China)") (collectively, "Plaintiffs").   The FAC is the latest in Melaleuca, Inc.'s pattern of playing fast and loose with facts and evidence to facilitate its improper blocking of Mr. Kot's right to earn a living.

Melaleuca, Inc. initiated this action in state court on January 17, 2018, alleging breach of and tortious interference with a pair of contracts that Mr. Kot and defendant Shaklee Corporation ("Shaklee") (collectively, "Defendants") have repeatedly shown are unenforceable against Mr. Kot (the "2010 Agreements").   With a tactic it still has not explained, Melaleuca, Inc. hid the existence of the most recent agreements "made between [Mr. Kot] and **Melaleuca, Inc., a corporation incorporated under the laws of the state of Idaho in the United States,** and . . . affiliates including [Melaleuca (China)]" in 2011 (the "2011 Agreements") and convinced the state court to issue a temporary restraining order that disrupted Defendants' personal and professional livelihoods.   Not until this week—over a month later and only after Defendants apprised this Court of the 2011 Agreements—did Melaleuca, Inc. include the 2011 Agreements in its FAC.

Plaintiffs have raised the possibility of Mr. Kot causing harm (*e.g.*, raiding of Melaleuca distributors ("Marketing Executives")) but have not shown any such actual harm (no proof that Shaklee hired a single Marketing Executive).   The sole potential exception was Plaintiffs' repeated reference to Mr. Kot's disclosure of Melaleuca (China)'s financial performance.   (Dkt. 39 at 20-21.)   But it turns out that this allegedly

secret information, Melaleuca (China)'s financial performance—for 2017, an annual sales figure of RMB 5 billion—is publicly available online in Chinese at http://uprich.com/index.php?m=Index&a=article&id=5899&type=1. (Kot Decl. ¶ 25.)

Plaintiffs' new argument that the 2011 and 2010 agreements are separately and concurrently enforceable is similarly disingenuous.

On the one hand, Melaleuca, Inc. has distanced itself from its subsidiaries to oppose the argument that the 2011 Agreements supersede the 2010 Agreements, by asserting that the 2011 Agreements only bind Mr. Kot and Melaleuca (China). In fact, Melaleuca, Inc. recently argued that it and Melaleuca (China) were wholly separate and railed against Shaklee's purportedly improper effort to "conflate Melaleuca[, Inc.] and its subsidiary":

> Shaklee's various arguments about jurisdiction and venue turn entirely on the question of which contracts apply: the 2010 agreements between Melaleuca[, Inc.] and Mr. Kot that are the subject of this lawsuit, or separate agreements between Mr. Kot and a different party altogether— Melaleuca[, Inc.]'s China subsidiary. . . . [Shaklee] seeks to conflate Melaleuca[, Inc.] and its subsidiary, and thus ignores proper corporate form.

(Dkt. 30 at 4 (citation omitted).) But on the other hand, in their FAC filed on February 19, 2018, Plaintiffs describe Melaleuca, Inc.'s control over Melaleuca (China)'s operations, including employment decisions and conclude that Melaleuca, Inc. jointly employed Mr. Kot:

> The decision to promote Kot [to a position with Melaleuca (China)] was made by Melaleuca, [Inc.] . . . Indeed, Melaleuca[, Inc.] exerts control over many key aspects of Melaleuca China's employment decisions, including interviewing candidates and making hiring and placement decisions. Additionally, Melaleuca[, Inc.] directs the development of its subsidiaries' standardized policies, forms, and other information that affect employee experience.

MEMORANDUM IN SUPPORT OF DEFENDANT KOT NAM SHAN'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT                    - 2

> Once again, Melaleuca[, Inc.] executives determined the
> terms of Kot's offer [with Melaleuca (China)].

(Dkt. 40-2 at 5.)  Melaleuca, Inc. cannot have it both ways.  It cannot expect anyone to

believe that it is wholly separate, "a different party altogether" from its subsidiaries on

one day, but so closely related that it "exerts control over many key aspects of

Melaleuca China's employment decisions" the next day.  More importantly, if such

mental gymnastics were possible, then Melaleuca, Inc. could have exercised its control

to direct that any reference to Melaleuca, Inc. in the 2011 Agreements be deleted before

their execution.  Instead, it allowed itself to be identified as a party to the 2011

Agreements (presumably to facilitate its imposition of restrictive covenants against Mr.

Kot).  Melaleuca, Inc. cannot now simply ignore the terms of its own 2011 Agreements

because it does not want to abide by the terms that require litigating any disputes with

Mr. Kot in China.

Neither the new allegations nor the addition of Melaleuca (China) as a plaintiff in

the FAC can rescue the lawsuit from dismissal.  The undisputed facts—especially the

validity of the 2011 Agreements which have the same titles, deal with the same subject

matters, use nearly identical language as the 2010 Agreements, and contain integration

clauses—still show that this action must be dismissed.  There is simply no personal

jurisdiction over Mr. Kot, an individual who currently resides in Asia, has lived his entire

life in Asia, and has worked for Chinese entities for over the past seven years, since

April 2011, supervising Chinese employees and interacting with Chinese Marketing

Executives.  (*See generally* Dkt 6.)  Yet, Plaintiffs continue their efforts to force a foreign

individual to litigate in a foreign country (*i.e.*, the United States) in his third language

(*i.e.*, English) based on the forum selection clauses of the 2010 Agreements—which

have been superseded by the 2011 Agreements, were never binding, or expired by their own terms—and on (most charitably put) misleading allegations that are constitutionally insufficient to create jurisdiction over Mr. Kot.[1]

Mr. Kot respectfully requests that this Court put a stop to Plaintiffs' unjustified disruption of his livelihood by dismissing Plaintiffs' FAC and having the parties move forward to adjudicating their disputes as contractually agreed in China.  As described in greater detail below, four separate and independent grounds mandate dismissal of the FAC: (1) lack of personal jurisdiction; (2) failure to join a party under Federal Rule of Civil Procedure 19; (3) *forum non conveniens*; and (4) insufficient service of process.

## II.   RELEVANT FACTS

### A.   Mr. Kot Has Lived and Worked His Entire Life in Asia.

Mr. Kot currently resides in Shanghai, China, which is 15 hours ahead of Pocatello, Idaho in time.  (Kot Decl. ¶ 2.)  He has lived and worked his entire life in Asia. (*Id.*)  Mr. Kot is a Chinese citizen.  (*Id.*)  With the exception of occasional business travel and leisure travel with his family, Mr. Kot has never lived or stayed in the United States for a prolonged period of time.  (*Id.* ¶ 3.)  Cantonese is his first language, Mandarin Chinese is his second language, and English is his third and weakest language.  (*Id.*) Mr. Kot currently works for Shaklee (China) Co. Ltd. in its Shanghai office.  (*Id.*)

### B.   Melaleuca, Inc. Was Never Mr. Kot's Employer.

From approximately May 17, 2010 to April 12, 2011, Mr. Kot worked in Malaysia

---

[1] Plaintiffs have not even performed their part of the bargain (paying Mr. Kot's monthly base compensation) required to make Mr. Kot's non-compete obligations enforceable under the 2011 Agreements.  Plaintiffs have also yet to explain why no one paid Mr. Kot even after filing the initial complaint on January 17, 2018.  Simply put, there is no enforceable non-compete agreement against Mr. Kot.  (*See infra* at 5-8.)

MEMORANDUM IN SUPPORT OF DEFENDANT KOT NAM SHAN'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT                           - 4

for Melaleuca (Malaysia).  (*Id.* ¶ 4.)  Shortly before Mr. Kot started his employment with Melaleuca (Malaysia), he was asked to sign two separate documents:   (1) a Key Employee Non-Interference and Non-Competition Agreement, and (2) a Confidentiality and Non-Solicitation Agreement.  (*Id.* ¶ 5.)  These 2010 Agreements were presented to Mr. Kot in English only, and there was no negotiation about any of the terms in the 2010 Agreements.  (*Id.*)  Although Melaleuca (Malaysia) was Mr. Kot's sole employer, it is not named as a party to the 2010 Agreements.  (*Id.*)  Instead, the 2010 Agreements contain only Mr. Kot's signature and name only Melaleuca, Inc. as a party.  (*Id.*)

Around early 2011, Mr. Kot decided to accept an employment opportunity with Melaleuca (China) in China.  (*Id.* ¶ 6.)  Melaleuca (China) initially hired Mr. Kot as an Assistant General Manager of Market Development.  (*Id.*)  Mr. Kot acted under the direction of General Manager Ted Lin ("Mr. Lin") until Mr. Lin left for a position in Taiwan.  (*Id.* ¶ 6.)  Mr. Kot was then promoted to General Manager.  (*Id.*)

At the beginning of Mr. Kot's employment with Melaleuca (China), on April 13, 2011, Mr. Kot was again asked to sign two agreements nearly identical to those he had signed before he began his employment with Melaleuca (Malaysia)  (*Id.* ¶ 7.)  Mr. Kot signed and executed these agreements—the 2011 Agreements—in China.  (*Id.*)  Mr. Kot received the 2011 Agreements in both Mandarin Chinese and English.  (*Id.* ¶ 8.)  Again, there was no negotiation about any of the terms in the 2011 Agreements.  (*Id.*)  The 2011 Agreements contain the same titles and deal with the same subject matters as the 2010 Agreements.  (*Id.*)  One difference between them is that the non-compete provision in the 2011 Agreements require Melaleuca (China) to pay Mr. Kot a monthly base compensation in order to impose non-compete obligations on Mr. Kot.  (*Id.*)  To

date, Mr. Kot has not been paid this monthly base compensation.  (*Id.* ¶¶ 22-23.)

Given that Mr. Kot had ended his employment with Melaleuca (Malaysia) before working for his new employer, Melaleuca (China), Mr. Kot understood that his relationship with his new employer would be guided only by the 2011 Agreements (rather than the 2010 Agreements), *id.* ¶ 9, which by their language bound not only Mr. Kot and Melaleuca, Inc., but also "Melaleuca, Inc.'s successors, assigns, current and former, local and international affiliates including [Melaleuca (China)]," *id.* ¶¶ 10-11, Exs. A-B.  Nobody told him otherwise until this litigation began and Melaleuca, Inc. argued that the 2010 Agreements remain binding.  (*Id.* ¶ 9.)

For over the next six years, Mr. Kot dedicated himself to working for Melaleuca (China) in Shanghai.  (*Id.* ¶ 14.)  During this period, all of Mr. Kot's compensation came solely from Melaleuca (China).  (*Id.*)   Similarly, Mr. Kot's compensation during his employment with Melaleuca (Malaysia) had come solely from Melaleuca (Malaysia), not Melaleuca, Inc.  (*Id.*)  Melaleuca, Inc. was never Mr. Kot's employer, and Mr. Kot has never received compensation from Melaleuca, Inc.  (*Id.*)

Mr. Kot also never viewed Melaleuca, Inc. as his employer.  (*Id.* ¶ 15.)  The key individuals whom Mr. Kot reported to and communicated with, such as Jerry Felton ("Mr. Felton"), the President of Melaleuca, Inc., held positions in Melaleuca (China) and Melaleuca (Malaysia)  (*Id.*)  Mr. Felton is a Supervisor of Melaleuca (China) and a member of the board of directors of Melaleuca (Malaysia)  (*Id.* ¶¶ 15-17, Exs. E-F.)  It was only natural that Mr. Kot would receive business guidance from the officers and directors of his employers, Melaleuca (Malaysia) and Melaleuca (China).  (*Id.*)

Mr. Kot resigned from Melaleuca (China) in the fall of 2017, and his last day was

November 15, 2017. (*Id.* ¶ 18.) A resignation certificate Mr. Kot received at the time of his departure from Melaleuca (China) identifies only Melaleuca (China) as Mr. Kot's employer. (*Id.* ¶¶ 18-19, Ex. G.) On January 8, 2018, Mr. Kot began his new and current employment with Shaklee (China) Co., Ltd. (*Id.* ¶ 18.)

### C. Mr. Kot Had Limited Contacts with Idaho.

Mr. Kot traveled to the United States once or twice a year, but his contacts with Idaho were limited. (*Id.* ¶ 20.) For example, he traveled annually to the United States with Chinese customers for a convention, but stayed in Salt Lake City. (*Id.*) Melaleuca (China) paid for this trip. (*Id.*) The convention typically lasted four to five days and took place in Salt Lake City. (*Id.*) Typically, there would be a short day trip by bus to Idaho for the customers to visit Melaleuca, Inc.'s headquarters and distribution center. (*Id.*) Before the convention, Mr. Kot and the Chinese customers spent about one to two days visiting another location in the United States, such as San Francisco. (*Id.*)

Moreover, contrary to Plaintiffs' representations, *see* Dkt. 1-6 at 25, Mr. Kot did not receive extensive mentoring from Melaleuca, Inc.'s employees in Idaho, Kot Decl. ¶ 21. As discussed above, Mr. Kot's interactions with Mr. Felton were necessary because Mr. Felton held positions in Melaleuca (China) and Melaleuca (Malaysia). (*Id.*) With respect to Melaleuca, Inc.'s chief executive officer, Frank VanderSloot, Mr. Kot at most talked to him two hours *per year* from 2011 to 2017. (*Id.*)

### D. Melaleuca (China) Had Every Opportunity to Make the 2011 Agreements' Non-Compete Provision Enforceable, but Decided Not to Take It.

In December 2017, when Mr. Felton asked Mr. Kot whether he intended to work for Shaklee, Mr. Kot responded truthfully that he could not guarantee that he would take any job if a good opportunity came by. (*Id.* ¶ 22.) Mr. Felton asked Mr. Kot whether Mr.

Kot needed a copy of his non-competition and confidentiality agreements, and given that Mr. Kot already had copies of the 2011 Agreements, Mr. Kot said no. (*Id.*) Despite the alleged rumors Mr. Felton said he had heard about Mr. Kot's offer from Shaklee, Mr. Felton never brought up the subject of paying Mr. Kot extra compensation to trigger Mr. Kot's non-compete obligations under the 2011 Agreements. (*Id.*)

In January 2018, Mr. Felton contacted Mr. Kot to speak with him personally, but Mr. Felton later canceled the meeting.   (*Id.* ¶ 23.)   Melaleuca (China) had every opportunity, including after the initial complaint was filed on January 17, 2018, to pay the monthly base compensation required to make Mr. Kot's non-compete obligations enforceable.   (*Id.*)   But Melaleuca (China) never even mentioned or brought up the subject of making the required payments for Mr. Kot's non-compete obligations.  (*Id.*)

### E.    Plaintiffs' Accusations that Mr. Kot Violated His Non-Solicitation and Confidentiality Obligations Are Baseless.

After Mr. Kot left Melaleuca (China), he never solicited any Marketing Executives to join his new employer, Shaklee (China) Co. Ltd.   (*Id.* ¶ 24.)   He talked to some Marketing Executives of Melaleuca (China) following his departure, but these interactions were social in nature; Mr. Kot never tried to convince them to leave Melaleuca (China) or any of its affiliates or to stop buying products from Melaleuca (China). (*Id.*) All of these individuals live and work in China. (*Id.*)

Mr. Kot has also never breached his confidentiality obligations to Melaleuca (China).  (*Id.* ¶ 25.) Figures such as Melaleuca (China)'s financial performance can be found publicly online, including its 2017 annual sales figure of RMB 5 billion.  (*Id.*)

### III.   ARGUMENT

### A.    No Personal Jurisdiction over Mr. Kot Exists.

MEMORANDUM IN SUPPORT OF DEFENDANT KOT NAM SHAN'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT                                        - 8

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, there is no applicable federal statute governing jurisdiction, the applicable law is the law of the state in which the district court sits. *Id.* Here in Idaho, "the Court need only look to federal due process to determine personal jurisdiction." *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1119 (D. Idaho 2009).

The exercise of personal jurisdiction over a defendant comports with federal due process only if the defendant "has certain minimum contacts with the relevant forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (internal quotation marks omitted). Sufficient minimum contacts can result in general or specific jurisdiction. *Rhino Metals, Inc. v. Kodiak Safe Co., LLC*, No. 1:16-285-EJL-REB, 2017 WL 2903339, at *5 (D. Idaho Mar. 5, 2017) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001)). General jurisdiction applies if the defendant's activities in the forum "are substantial, continuous and systematic," whereas specific jurisdiction applies if a defendant's "less substantial contacts with the forum give rise to the cause of action before the court." *Id.*

### 1.   Mr. Kot Never Consented to Jurisdiction in Idaho for His Work in China.

A person may submit to a court's jurisdiction in a state voluntarily or by being domiciled in that state. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880-81 (2011) (plurality opinion). Here, Mr. Kot resides in Shanghai, China, not Idaho, and he has never consented to jurisdiction in Idaho for his work in China.

Plaintiffs contend that Mr. Kot consented to jurisdiction by signing the 2010 Agreements, which contain Idaho forum selection clauses.  (Dkt. 39 at 6.)  The 2010 Agreements are no longer operative for at least three reasons.  First, the 2011 Agreements made between Mr. Kot and "**Melaleuca, Inc.**, and . . . affiliates including [Melaleuca (China)]" supersede the 2010 Agreements, assuming the 2010 Agreements were ever binding.  (*See* Dkt. 6-1 at 9; Dkt. 28 at 15-16.)  Second,  the non-compete obligations of Mr. Kot under the 2010 Agreements at issue were never enforceable pursuant to Malaysian law, and in any case the 2010 Agreements were never binding because they were not supported by consideration.  (*See* Dkt. 28 at 16.)  Third,  the 2010 Agreements expired by their own terms a year after Mr. Kot started working for Melaleuca (China).  (*See* Dkt. 28 at 15.)

       a.    **The 2011 Agreements Supersede the 2010 Agreements.**

It "is a well settled principle that [a] later contract supersedes [a] former contract as to inconsistent provisions." *NLRB v. Int'l Union of Operating Eng'rs Local No. 12, AFL-CIO*, 323 F.2d 545, 548 (9th Cir. 1963); *see also Thomas v. Thomas*, 150 Idaho 636, 645 (2011) ("[A] contract may be set aside by a subsequently executed contract which either deals with the subject matter of the prior contract so comprehensively as to raise the inference of substitution or is so inconsistent with the prior contract that the two cannot stand together." (citation omitted)).[2]  Extrinsic evidence regarding the parties' intent is admissible only if the language of the contract is ambiguous.  *Foster v. Johnstone*, 107 Idaho 61, 65 (1984) ("[Q]uestions of contract interpretation and meaning

---

[2] Mr. Kot disputes that Idaho law applies here, but even the application of Idaho law contracts law demonstrates that the 2010 Agreements are no longer enforceable.

may only become questions of fact where there has been found to be ambiguity in the contract."); *see also* 17A C.J.S. Contracts § 395 (2017) ("It is the terms of the written contract, not one of the parties' mental impressions that control its interpretation.").

Here, the 2011 Agreements, which contain China forum selection clauses, are fully integrated agreements. They have the same titles, deal with the same subject matters (non-competition, non-solicitation, and confidentiality), and use nearly identical language as the 2010 Agreements. Accordingly, the 2011 Agreements supersede the 2010 Agreements. Even if the 2010 Agreements were to survive, however, their Idaho forum selection clauses do not. The earlier Idaho forum selection clauses are inherently inconsistent with the later China forum selection clauses of the 2011 Agreements. A non-exclusive provision cannot co-exist with a prior exclusive provision on the same subject matter, because the exclusive provision would necessarily obviate the non-exclusive provision and render it meaningless.

Melaleuca, Inc. argues that the 2010 Agreements were not superseded on the grounds that it is not a party to the 2011 Agreements. This argument is meritless. The 2011 Agreements plainly provide that they are "made between [Mr. Kot] and **Melaleuca, Inc.**, and . . . affiliates including [Melaleuca (China)]." Further, Melaleuca, Inc.'s President has declared that Melaleuca, Inc. "exerts control over many key aspects of Melaleuca China's **employment decisions**, including interviewing candidates and making hiring and placement decisions." (Dkt. 40-2 at 5 (emphasis added).) Given Melaleuca, Inc.'s self-professed control over Melaleuca (China), including over Melaleuca (China)'s employment forms, Melaleuca, Inc. clearly chose to be a party to the 2011 Agreements, and cannot disavow that now.

b.     The 2010 Agreements' Non-Compete Provision
Was Not Enforceable, and in Any Case, the 2010
Agreements Were Never Binding.

The supersession discussion above assumes for the sake of argument that the

2010 Agreements were binding in the first place.   But they were not.   As an initial

matter, the non-compete provision under the 2010 Agreements, which Mr. Kot signed

shortly before he began his employment with Melaleuca (Malaysia), was unlawful and

unenforceable from the beginning pursuant to Malaysian law.  In Malaysia, "a covenant

in restraint of trade" is "void under [section] 28 of [its Contract] Act [1950]."[3]   (Coletti

Decl. ¶ 2, Ex. A (*Vision Cast Sdn. v. Dynacast Melaka Sdn. Bhd.* [2015] 1 MLJ 424) at

15.)

Regardless, the 2010 Agreements were never binding because they were not

supported by consideration.    "To be enforceable at law, an agreement must be

supported by valid consideration."  *Weisel v. Beaver Springs Owners Ass'n, Inc.*, 152

Idaho 519, 526 (2012).  The 2010 Agreements state the consideration for the contract

as Mr. Kot's "employment or continued employment" with "Melaleuca, Inc."  (Kot Decl. ¶

12, Ex. C at 1; *id.* ¶ 13, Ex. D at 1.)  But Melaleuca, Inc. was never Mr. Kot's employer.

Melaleuca, Inc.'s application of the joint employer test to argue that it employed

Mr. Kot during his employment with its subsidiaries is inapposite here.  This test was

designed to effectuate the remedial purposes of the various employment statutes in the

---

[3] Notwithstanding this well established rule, the Melaleuca entities apparently tried to
impose non-compete obligations on Mr. Kot, a worker in Malaysia, by having him sign
documents with Idaho choice-of-law provisions with Melaleuca, Inc.     These
circumstances further undercut Melaleuca, Inc.'s arguments that it is not a party to the
2011 Agreements and that the 2010 and 2011 Agreements are separately enforceable.
It is apparent that Melaleuca, Inc. sought to cure any challenge that Mr. Kot would have
to the enforceability of the 2010 Agreements' non-compete provision under Malaysian
law by naming itself as a party to the 2011 Agreements governed by Chinese law.

United States to allow individuals to remedy wrongs done by the actual persons who affected their employment.  For example, when applying the joint employer, economic realities test under the Fair Labor Standards Act (the "FLSA"), the Ninth Circuit has stated that "[t]he definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' and is to be given an expansive interpretation **in order to effectuate the FLSA's broad remedial purposes**."  *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983) (emphasis added), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985); *Ruiz v. Fernandez*, 949 F. Supp. 1055, 1064 (E.D. Wash. 2013).  A parent company's attempt to enforce restrictive covenants in an agreement entered into by a subsidiary and the subsidiaries' employees was not a remedial purpose of the FLSA.

Moreover, Melaleuca, Inc.'s position that it jointly employed Mr. Kot contradicts its position that it is not a party to the 2011 Agreements.  Melaleuca, Inc. has taken the position for over one month that the 2011 Agreements apply only to Mr. Kot and Melaleuca (China).  But now, it asserts that it has executive control (including with employment decisions) over Melaleuca (China) such as to make Mr. Kot its employee. If Melaleuca, Inc. wishes to continue taking the position that it employed Mr. Kot, it must concede that it is bound by the 2011 Agreements made between Mr. Kot and "**Melaleuca, Inc.**, and . . . affiliates including [Melaleuca (China)]."

c.    **Even If the 2010 Agreements Were Binding, They Expired by Their Own Terms.**

It is clear that the parties to the 2010 Agreements (which Mr. Kot signed a month before joining Melaleuca (Malaysia)) are only Mr. Kot and "Melaleuca, Inc."  The facts here are simply that Melaleuca, Inc. never employed Mr. Kot, and the 2010

Agreements—assuming they were ever binding as a result of Mr. Kot's employment with Melaleuca (Malaysia)—expired by their own terms. Mr. Kot was never told that he would be an employee of Melaleuca, Inc., Kot Decl. ¶ 5, and other than arguing it did, Melaleuca, Inc. has not proven facts demonstrating that it in fact was Mr. Kot's employer. Moreover, Mr. Kot's communications with certain individuals employed by Melaleuca, Inc. were not in their capacities as Melaleuca, Inc. employees, but instead in their positions as directors and officers of Melaleuca (China) and Melaleuca (Malaysia).

Thus, whichever position Melaleuca, Inc. wishes to take—joint employer with or "different party altogether" from its subsidiaries—the 2010 Agreements are no longer enforceable. Accordingly, jurisdiction cannot be established over Mr. Kot by nature of his consent based on his signing of the 2010 Agreements.

### 2.   No Specific Jurisdiction over Mr. Kot Exists.

"In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal, S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017) (internal quotation marks omitted). "**When there is no such connection, specific jurisdiction is lacking** regardless of the extent of a defendant's unconnected activities in the State." *Id.* (emphasis added); *see also Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). The "**primary concern**" with respect to the minimum contacts analysis is "**the burden on the defendant**." *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

The Ninth Circuit analyzes specific jurisdiction with a three-prong test: (1) the

non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Yahoo!*, 433 F.3d at 1205-06.  None of the three prongs is met here.

### a.    There Has Been No Purposeful Availment.

The first prong of the specific jurisdiction test is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560 (9th Cir. 1995).  The U.S. Supreme Court, in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985), has held that the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the non-resident. Moreover, the Ninth Circuit has indicated that personal jurisdiction may not be asserted "whenever a foreign employee communicates with a corporation's headquarters about foreign operations." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002). The Ninth Circuit has also concluded that "ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (internal quotation marks omitted).

Here, the 2010 Agreements are no longer enforceable—they were superseded by the 2011 Agreements, were never binding, or expired by their own terms.  The 2011 Agreements, which were signed in China, call for the application of the laws of the People's Republic of China and access to China's courts.  *See McGlinchy v. Shell*

MEMORANDUM IN SUPPORT OF DEFENDANT KOT NAM SHAN'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT                        - 15

*Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988) (finding no jurisdiction where contract signed in forum because negotiated in England, and execution and termination conducted by mail).   Plaintiffs may contend that Mr. Kot purposely availed himself through visits to Idaho and discussions with employees of Melaleuca, Inc.   But these visits to Idaho were limited—for example, a short day trip with Chinese customers—and Mr. Kot's discussions with employees of Melaleuca, Inc., including Mr. Felton, were in their capacity as officers and directors of Mr. Kot's actual employers in China and Malaysia.   Most importantly, as explained below, the "affiliation between the forum and the underlying controversy" is nowhere near sufficient. *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

### b.      Plaintiffs' Claims Relate to Mr. Kot's Activities in China, Not in Idaho.

For a court "to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017).   Even if purposeful availment were established here (it is not), the second factor of relatedness is not satisfied. Melaleuca's claims against Mr. Kot relate to his activities in China—his current employment with Shaklee (China) Co. Ltd., the alleged disclosure of confidential information in China (which information is publicly available in China), his meetings in China with individuals who live and work in China, and his representations about his future plans to an officer of a Chinese entity, Melaleuca (China).   Simply put, Plaintiffs' claims against Mr. Kot do not arise out of Mr. Kot's activities in Idaho.

### c.      It Would Be Unreasonable to Exercise Jurisdiction over Mr. Kot in Idaho.

To determine the reasonableness of exercising jurisdiction over a defendant,

courts consider the following factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).

Here, these factors weigh heavily in favor of dismissal of this lawsuit: (1) as discussed above, Mr. Kot has not purposely availed himself in Idaho; (2) it would be greatly inconvenient for Mr. Kot to continue litigating this matter in the United States, given that he would need to fly over the Pacific and the burden of a day-night time difference in communicating with his Idaho counsel; (3) given that the 2011 Agreements were signed in China, concern Mr. Kot's employment in China with Melaleuca (China), a Chinese entity, and are governed by the laws of the People's Republic of China, the exercise of jurisdiction here by an Idaho court would conflict with China's sovereignty; (4) there is little interest in Idaho's adjudication of this dispute, which arises out of Mr. Kot's activities in China, not in Idaho; (5) judicial economy would be disserved by adjudicating claims that are governed by Chinese law, and where the real parties in interest—Mr. Kot, Melaleuca (China), and Shaklee (China) Co. Ltd.—are all in China; (6) Melaleuca (China), a Chinese entity based in China, cannot reasonably dispute that China is a more important forum than Idaho for convenient and effective relief against a Chinese citizen; and (7) an adequate alternative forum exists in China.

**B.    Regardless of the Forum, This Action Should Not Move Forward Without Indispensable Party Shaklee (China) Co. Ltd.**

A party is necessary under Federal Rule of Civil Procedure 19(a) if it has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest. Rule 19(b) provides four factors to determine whether an action should be dismissed because a non-party is indispensable: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum.

Here, Shaklee (China) Co. Ltd.—a Chinese entity and Mr. Kot's actual current employer—is an indispensable party because its interest in continuing to employ Mr. Kot may be impaired without its joinder. Also, if this action moves forward and factual findings are made, it could later prejudice Shaklee (China) Co. Ltd. if Plaintiffs decide to file a separate lawsuit against Shaklee (China) Co. Ltd. in China. Further, because Shaklee (China) Co. Ltd. is the business entity that employs Mr. Kot, it is doubtful that a less prejudicial, adequate relief could be fashioned with only Shaklee involved. Lastly, and as discussed below, China exists as an adequate alternative forum.

### C.   This Action Should Be Dismissed for *Forum Non Conveniens*.

"The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reynolds*, 454 U.S. 235, 257 (1981). This determination must be made with the examination of whether an adequate alternative forum exists and whether the balance of private and public interest factors favors dismissal. *Id.* Here, all factors favor dismissal.

First, China exists as an adequate alternative forum. Other federal courts have held that China provides an adequate forum to resolve civil disputes, including "straightforward contractual dispute with similarly uncomplicated ancillary tort claims

that a Chinese court can adequately manage." *Huang v. Advanced Battery Techs., Inc.*, No. 09 CV 8279(HB), 2010 WL 2143669, at *5 (S.D.N.Y.); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-36 (2007).

Second, the private interest factors here favor dismissal.  Given that Mr. Kot's alleged breaches of the 2010 and 2011 Agreements took place in China, the relevant witnesses and other evidence are most likely to be in China.  Indeed, the Marketing Executives whom Mr. Kot spoke with following his departure from Melaleuca (China) and who can testify that he never tried to solicit them all live in China.  Also, it would be cheaper to litigate this lawsuit in China, as the relevant witnesses, including Mr. Kot, live there.  Moreover, having all of the interested parties (which would include Shaklee (China) Co. Ltd. in this lawsuit) be in one location and adjudicate their claims in one location as to avoid inconsistent obligations would be the most expeditious and least expensive.  *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995) (listing the private interest factors).

Lastly, the public interest factors favor dismissal.  Here, Plaintiffs' claims against Defendants relate to Mr. Kot's actions in China, not in Idaho.  Therefore, it would be best to have this controversy localized in China be adjudicated in China.  Also, as Plaintiffs' claims against Mr. Kot are governed by the laws of the People's Republic of China, judicial economy is disserved by adjudicating claims that are governed by the laws of a foreign country.  *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009) (listing the public interest factors).

### D.    Mr. Kot Has Still Not Been Properly Served.

The burden is on Plaintiffs to prove that service was valid.  *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  Here, Plaintiffs have still failed to properly

serve Mr. Kot pursuant to the Hague Convention rules.   *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("It is mandatory to apply the Hague Convention when both countries are signatories to the Convention.").

Melaleuca, Inc. has purported to have effectuated service on Mr. Kot by having a private service deliver papers personally to him in Hong Kong.  Multiple courts have held that such service in Hong Kong does not comply with the Hague Convention.  *See, e.g.*, *Home Casual Enter. Ltd. v. Home Casual, LLC*, No. 11-cv-661-wmc, 2012 WL 13042156, at \*6 (W.D. Wis. Nov. 13, 2012);[4] *HCT Packaging v. TM Int'l Trading Ltd.*, No. CV 13-08443 RGK (SHx), 2014 WL 12696776 at \*6 (C.D. Cal. Mar. 10, 2014).

## IV.   CONCLUSION

For the foregoing reasons, Mr. Kot respectfully requests that this Court dismiss this action based on any one or all of the following separate and independent grounds: (1) lack of personal jurisdiction; (2) failure to join party under Federal Rule of Civil Procedure 19; (3) *forum non conveniens*; and (4) insufficient service of process.

---

[4] In *Home Casual Enterprise Ltd. v. Home Casual, LLC*, No. 11-cv-661-wmc, 2012 WL 13042156, at \*6 (W.D. Wis. Nov. 13, 2012), for example, the court dismissed a complaint against parties who (like Mr. Kot) were personally served with court papers in Hong Kong by a private process server.  The court noted that while Article 10(b) of the Hague Convention authorizes service "directly through the judicial officers, officials or other competent persons of the State of destination," it applies "only if the Hague Convention signatory does not object." *Id.* at \*5.  The court then observed that China's acceptance of the Hague Convention on behalf of Hong Kong contained an express reservation with reference to Article 10(b), making clear that "documents for service through official channels will be accepted in the Hong Kong Special Administrative Region only by the Central Authority or other authority designated, and only from judicial, consular or diplomatic officers of other Contracting States." *Id.*  The court ruled that this reservation precluded use of private process servers under Article 10(b), and dismissed the complaint against the two parties personally "served" in Hong Kong. *Id.*

DATED THIS 26th day of February, 2018.

HOPKINS RODEN CROCKETT
HANSEN & HOOPES, PLLC

By: */s/ Sean J. Coletti*
Sean J. Coletti
Attorneys for Kot Nam Shan

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2018, I electronically filed the foregoing with the Clerk of the Court using the CME/ECF system which sent a Notice of Electronic Filing to the following person(s):

Richard R. Friess
THOMSEN HOLMAN WHEILER, PLLC
fries@thwlaw.com

Brian M. Lutz
GIBSON DUNN
blutz@gibsondunn.com

*Attorneys for Plaintiff*

Brooks B. Bond
PARSONS BEHLE & LATIMER
bbond@parsonsbehle.com

Kent L. Hawkins
MERRILL & MERRILL
khawk@merrillandmerrill.com

*Attorneys for Defendant Shaklee Corp.*

/s/ Sean J. Coletti
Sean J. Coletti

MEMORANDUM IN SUPPORT OF DEFENDANT KOT NAM SHAN'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT                - 22