Brook B. Bond, ISB No. 6340
Jamie K. Ellsworth, ISB No. 8372
Christina Hardesty, ISB No. 10396
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID  83702
Telephone:  (208) 562-4900
Facsimile:  (208) 562-4901
Email: BBond@parsonsbehle.com
        JEllsworth@parsonsbehle.com
        CHardesty@parsonsbehle.com

Kent L. Hawkins, ISB No. 3791
MERRILL & MERRILL
109 N. Arthur Avenue, Fifth Floor
Pocatello, ID 83204
Telephone: (208) 232-2286
Email: KHawk@merrillandmerrill.com

Arturo J. Gonzalez (admitted *pro hac vice*)
Eric A. Tate (admitted *pro hac vice*)
Anna Ferrari (admitted *pro hac vice*)
Morrison Foerster LLP
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-6915
Email: AGonzalez@mofo.com
        ETate@mofo.com
        AFerrari@mofo.com

Attorneys for Defendant
Shaklee Corporation

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation, and MELALEUCA (CHINA) WELLNESS PRODUCTS CO., LTD., a wholly-owned subsidiary of Melaleuca, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> KOT NAM SHAN, an individual, and SHAKLEE CORP., a Delaware corporation, <br><br> Defendants. | Case No. 4:18-cv-00036-DCN <br><br> SHAKLEE CORP.'S RESPONSE TO AMENDED MOTION FOR PRELIMINARY INJUNCTION |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................. 3

III. LEGAL STANDARD ....................................................................................... 6

IV. ARGUMENT ..................................................................................................... 7

    A.    Injunctive Relief Cannot Issue Because This Court Is Not an Appropriate Forum for This Litigation and Also Lacks Jurisdiction over Kot ......................... 7

    B.    Plaintiffs Have Not Met Their Burden to Show a Preliminary Injunction Should Issue ................................................................................................ 8

        1.    Apart from the Threshold Issues of Jurisdiction and Forum, Plaintiffs Fail to Establish any Likelihood of Success on the Merits ........ 8

        2.    Plaintiffs' Contract Claims Against Mr. Kot Fail ..................................... 9

            a.    The 2010 Agreements Are Void for any of Three Alternative Reasons ................................................................ 9

                (1)    The 2011 Agreements Supersede the 2010 Agreements ........................................................................ 9

                (2)    The 2010 Agreements' Non-Compete Provision Is Void for Lack of Consideration ...................................... 11

                (3)    Even If the 2010 Agreements Were Binding, They Expired by Their Terms by at Least 2012 ...................... 12

                (4)    Any Ambiguities in the Contracts Should Be Interpreted Against Plaintiffs ........................................... 13

            b.    Kot Has Not Breached the 2011 Agreements ............................. 13

            c.    The Non-Compete Provisions in the 2011 Agreements Are Overbroad and Unlawful and Thus Cannot Be Enforced ........... 14

        3.    Plaintiffs Fail to Establish That Shaklee Tortiously Interfered With any Contract ....................................................................................... 15

        4.    Plaintiffs' Assertions of Irreparable Harm Are Factually Unsupported, Speculative, and Legally Insufficient to Justify a Preliminary Injunction ........................................................................ 16

        5.    The Balance of Equities Favors Defendants ........................................... 18

        6.    Plaintiffs Have Not Made a "Clear Showing" That the Preliminary Injunction Is in the Public Interest ......................................................... 20

V. CONCLUSION ................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpha Theta of Alpha Delta PI Bldg. Ass'n v. Pacific Northwest Regional Council of Carpenters*,
  No. C09–1306RSL, 2009 WL 3064688 (W.D. Wash. Sept. 23, 2009)...................................19

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1980) ..............................................................................................7

*Bonnette v. Cal. Health and Welfare Agency*,
  704 F.2d 1465 (9th Cir. 1983) ............................................................................................12

*Dahl v. HEM Pharmaceuticals Corp.*,
  7 F.3d 1399 (9th Cir. 1993) ................................................................................................19

*Deer Valley Trucking Inc. v. Lease One Corp.*,
  No. 4:12-CV-00604-BLW, 2013 WL 4433731 (D. Idaho Aug. 16, 2013) ................10, 11, 13

*DePuy Synthes Sales, Inc. v. Williams*,
  No. 1:17-CV-00404-REB, 2017 WL 5011880 (D. Idaho Nov. 2, 2017) ...............................17

*Earth Island Institute v. Carlton*,
  626 F.3d 462 (9th Cir. 2010) ..............................................................................................19

*Freiburger v. J-U-B Engineers, Inc.*,
  141 Idaho 415 (2005)...........................................................................................................15

*Goldie's Bookstore v. Superior Court.*,
  739 F.2d 466 (9th Cir. 1984) ..............................................................................................17

*Greater Boise Auditorium Dist. v. Frazier*,
  159 Idaho 266 (2015)...........................................................................................................15

*Grover v. Isom*,
  137 Idaho 770 (2002)..............................................................................................................9

*Kunz v. Nield, Inc.*,
  162 Idaho 432 (2017)....................................................................................................10, 13

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
  634 F.2d 1197 (9th Cir. 1980) ............................................................................................17

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997)................................................................................................................7

*MWI Veterinary Supply Co. v. Wotton*,
   896 F.Supp.2d 905 (D. Idaho 2012) ...................................................................18

*Naegeli Reporting Corp. v. Petersen*,
   3:11–1138–HA, 2011 WL 11785484 (D. Or. Dec. 5, 2011) ..................................20

*NLRB v. Int'l Union of Operating Eng'rs Local No. 12, AFL-CIO*,
   323 F.2d 545 (9th Cir. 1963) ...............................................................................10

*Ocean Beauty Seafoods, LLC v. Pacific Seafood Group Acquisition Co., Inc.*,
   648 Fed. Appx. 709 (9th Cir. 2016)......................................................................18

*Pinnacle Performance, Inc. v. Hessing*,
   135 Idaho 364 (Ct. App. 2001) .............................................................................15

*Ruiz v. Fernandez*,
   949 F. Supp. 1055 (E.D. Wash. 2013) ..................................................................12

*Sammartano v. First Judicial District Court*,
   303 F.3d 959 (9th Cir. 2002) ...............................................................................20

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*,
   549 U.S. 422 (2007).............................................................................................7, 8

*Solis v. Hutcheson*,
   No. 1:12-CV-236-EJL, 2012 WL 2151525 (D. Idaho June 13, 2012) ...................18

*Stuber v. CGH Technologies, Inc.*,
   C/A No. 03:07-cv-3094-JFA, 2008 WL 11349816 (D.S.C. Jan. 29, 2008) ...........20

*Thomas v. Thomas*,
   150 Idaho 636 (2011)......................................................................................10, 11

*Weisel v. Beaver Springs Owners Ass'n, Inc.*,
   152 Idaho 519 (2012)............................................................................................11

*Wesco Autobody Supply, Inc. v. Ernest*,
   149 Idaho 881 (2010).........................................................................................9, 16

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)...............................................................................................7, 17

*Wittenbrook v. Electronics Recycling Servs. Inc.*,
   No. 16 BE 0023, 2018 WL 501548, --- N.E.3d --- (Ct. App. Ohio 2018)..............12

## Statutes

Idaho Code § 44-2704(6) ................................................................................................17

PRC's Labor Contract Law Article 23 .......................................................................................... 13

**Other Authorities**

*Vision Cast Sdn. v. Dynacast Melaka Sdn. Bhd.*
   [2015] 1 MLJ 424 .................................................................................................................... 20

Restatement (Second) Conflict of Laws, section 145 .................................................................... 9

2016 Idaho Laws Ch. 281 (H.B. 487) ........................................................................................... 18

Defendant Shaklee Corporation ("Shaklee") hereby respectfully submits its Response to Plaintiffs' Amended Motion for Preliminary Injunction (Dkt. 40), filed February 20, 2018.

## I. INTRODUCTION

On January 18, 2018, in this action alleging breach of and interference with non-compete and confidentiality agreements signed in 2010 (the "2010 Agreements"), plaintiff Melaleuca, Inc. obtained an overbroad temporary restraining order (TRO) in Idaho state court which, among other things, enjoined defendant Kot Nam Shan ("Kot") from working for or speaking with Shaklee and imposed vague and expansive expedited discovery on Shaklee and Kot, all based on a speculative showing of potential harm (without disclosing the existence of non-compete and confidentiality agreements between Plaintiffs and Kot in 2011 (the "2011 Agreements")). Since then, Melaleuca Inc.'s theories keep evolving, but its case on the merits only continues to devolve.

Shaklee and Kot removed this action to the District of Idaho and moved to dismiss the case for lack of personal jurisdiction and *forum non conveniens*. (China, not Idaho, is the forum that has the most significant relationship to the complaint allegations, and where Plaintiffs and Kot have already agreed to litigate disputes arising from the 2011 Agreements.) Melaleuca, Inc. acknowledged the existence of the 2011 Agreements, but argued they did not apply. The Court declined to extend the TRO and found no good cause for Plaintiffs to conduct expedited discovery.

Melaleuca, Inc. amended the complaint adding Melaleuca (China) Wellness Products Co., Ltd. ("Melaleuca (China)") as a party and despite months of disavowing them, now embrace the 2011 Agreements explaining that "it was, and remains, Melaleuca's intent to have two sets of agreements that exist in parallel." Melaleuca, Inc. concedes that it is a separate entity from Melaleuca (China), the employer that Kot began working for in 2011, but has not demonstrated why the 12 month post-termination non-compete and other restrictive covenants in the 2010 Agreements did not expire in 2012, a year after Kot left to join Melaleuca (China). Alternatively, Melaleuca, Inc.

SHAKLEE CORP.'S RESPONSE TO AMENDED MOTION FOR PRELIMINARY INJUNCTION

has not demonstrated how the 2011 Agreements, which provide that they are "made between [Kot] and Melaleuca, Inc., and . . . affiliates including [Melaleuca (China)]" did not supersede the 2010 Agreements.

In the Amended Motion for Preliminary Injunction, Plaintiffs introduce yet another heretofore unmentioned new theory in an effort to rescue their claims—Melaleuca, Inc. was a joint employer of Kot. (Dkt. 47-3, ¶ 5.)  But other than baldly saying it was so, Plaintiffs do not present evidence to show that Melaleuca, Inc. in fact was Kot's employer.  Moreover, Plaintiffs neither cite nor is Shaklee aware of any authority even suggesting that the joint employer doctrine—designed to expand the parties who can be liable for wrongs against employees—can be used to interpret a contract, much less expand the parties to whom an employee is obliged.

And perhaps most incredibly, the 2011 non-compete clause by its own terms and under Chinese law is contingent upon the payment of monthly compensation to Kot, but even as of the date of this filing, Plaintiffs have not paid Kot any of the requisite monthly compensation.  In other words, there is not now, nor has there ever been, any non-compete to enforce, much less to breach or with which to interfere.

Finally, Plaintiffs' alleged future harm remains entirely speculative and unsupported by specific facts or law.  Indeed, the sole piece of "confidential" information alleged to have been taken is publicly available (and, even if it were not, Plaintiffs offer no proof that it was taken or disclosed by Kot or should have remained in confidence in the first place).

Melaleuca, Inc. may be a multibillion dollar company, but it cannot manufacture facts or law. Enough is enough.  It is finally time to put Melaleuca's anti-competitive campaign to rest, and let Kot earn a livelihood for himself and his family and allow Shaklee Corporation to operate its

business. We respectfully request that this Court deny in its entirety, Plaintiffs' Amended Motion for Preliminary Injunction.

## II.  STATEMENT OF FACTS

Melaleuca (China) is a subsidiary of Melaleuca China, LLC (an Idaho LLC), which in turn is a subsidiary of Melaleuca, Inc., an Idaho corporation. Melaleuca (China) formerly employed Kot in China.  (Dkt. 47-3, ¶¶ 6-7.)  Before working for Melaleuca (China), from approximately May 17, 2010 to April 12, 2011, Kot worked in Malaysia for Melaleuca Southeast Asia (Malaysia) Sdn. Bhd. ("Melaleuca (Malaysia)").  (*Id.* ¶ 4.)  Shaklee, the American business entity and the sole corporate defendant in this case, has never employed Kot.  (Dkt. 7-2 at 2.)

Shortly before Kot started his Malaysia-based employment, he was asked to sign the 2010 Agreements.  (*Id.* ¶ 5.)  These 2010 Agreements were presented to Kot in English only, and there was no negotiation about any of their terms.  (*Id.*)  Melaleuca (Malaysia), Kot's sole employer, was not a party to the 2010 Agreements.  (*Id.*)  The 2010 Agreements contain only Kot's signature and name only Kot and Melaleuca, Inc. as parties.  (*Id.*)  The 2010 Agreements indicate that Kot is (or "is currently, or will be" in the case of one of them) employed by Melaleuca, Inc.  (*Id.* at 38, 44.) They further state that Kot is restricted during his employment with Melaleuca, Inc. and, for a time thereafter as stated, from taking particular actions in consideration for the employment by Melaleuca, Inc. and compensation paid therefor.  (*Id.*)  Notwithstanding these recitals, Melaleuca, Inc. has yet to show that it (as opposed to Melaleuca (Malaysia)) ever employed or paid compensation to Kot for such employment.

Around early 2011, Kot decided to join Melaleuca (China) in China.  (Dkt. 47-3, ¶ 6.) Melaleuca (China) hired Kot as an Assistant General Manager of Market Development and later promoted him to General Manager.  (*Id.*)  Kot signed a labor contract with Melaleuca (China) identifying the employing party as Melaleuca (China).  (*Id.*)  Although Melaleuca, Inc. now alleges

that it jointly employed Kot along with Melaleuca (Malaysia) and later Melaleuca (China), Melaleuca, Inc. has not provided any labor contract between Melaleuca, Inc. and Kot.

At the beginning of Kot's employment with Melaleuca (China), Kot was again asked to sign two non-compete and confidentiality agreements nearly identical to those he had signed before he began his employment with Melaleuca (Malaysia).  (*Id.* ¶ 7.)  Kot signed and executed these agreements—the 2011 Agreements—in China.  (*Id.*)  Kot received the 2011 Agreements in both Mandarin Chinese and English.  (*Id.* ¶ 8.)  There was no negotiation about any of the terms in the 2011 Agreements.  (*Id.*)  The 2011 Agreements contain the same titles and deal with the same subject matters as the 2010 Agreements.  (*Id.*)  One difference between them is that the non-compete provision in the 2011 Agreements expressly require Melaleuca (China) to pay Kot a monthly base compensation in order to impose non-compete obligations on Kot:

> In the event of termination or expiry of the [employment] Contract, Employer has the right to choose whether to require Employee to perform the Non-Competition obligations . . . . If Employer opts not to require Employee to perform the non-competition obligations during the Period of Restriction, Employer shall not pay the economic compensation or non-competition noted above.

(Dkt. 47-3 at 11.)  Kot has never been paid this monthly base compensation.  (*Id.* ¶¶ 22-23.)  The 2011 Agreements further provide that each "sets forth the entire agreement and understanding between the parties respecting the matters within its scope."  (Dkt. 47-3 at 17, 30.)

Given that Kot's employment with Melaleuca (Malaysia) necessarily ended before he began working for Melaleuca (China), Kot understood that the 2011 Agreements, which, by their language, bound Kot and Melaleuca (China) and "Melaleuca, Inc. and its successors, assigns, current and former, local and international affiliates including [Melaleuca (China)]," *id.* ¶¶ 10-11, Exs. A-B, would govern (rather than the 2010 Agreements), *id.* ¶ 9.  Nobody told him otherwise until this litigation began and Melaleuca, Inc. alleged that the 2010 Agreements remain binding.  (*Id.* ¶ 9.)

SHAKLEE CORP.'S RESPONSE TO AMENDED MOTION FOR PRELIMINARY INJUNCTION

From April 13, 2011 until November 15, 2017, Kot dedicated himself to working for Melaleuca (China) in Shanghai.  (*Id.* ¶ 14.)  During this period, all of Kot's compensation came solely from Melaleuca (China).  (*Id.*)  Melaleuca, Inc. was never Kot's employer, and Kot has never received compensation from Melaleuca, Inc.  (*Id.*; *see also* Dkt. 51, Decl. Kot, ¶ 7.)  Kot resigned from Melaleuca (China) in the fall of 2017, and his last day was November 15, 2017.  (Dkt. 47-3,¶ 18.)  A resignation certificate Kot received at the time of his departure from Melaleuca (China) identifies only Melaleuca (China) as Kot's employer.  (*Id.* ¶¶ 18-19, Ex. G.)  On January 8, 2018, Kot began his current employment with Shaklee (China) Co. Ltd. ("Shaklee (China)").  (*Id.* ¶ 18.)

In December 2017, Mr. Felton asked Kot whether he intended to work for Shaklee.  Kot responded truthfully that he could not guarantee that he would decline any job if a good opportunity came by and disclosed that he had been in communication with Shaklee regarding a job opportunity.  (Dkt. 51, Decl. Kot, ¶ 15.)  Despite the rumors Mr. Felton claims to have heard about Kot's offer from Shaklee, Melaleuca (China) never even mentioned the subject of making the required payments for Kot's non-compete obligations.  (*Id*. ¶ 16.)

Also in December 2017, Ryan Nelson of Melaleuca, Inc. contacted Marjorie Fine, Director and former General Counsel of Shaklee, to inquire whether Shaklee (China) had hired Kot.  (Decl. M. Fine, ¶ 8.)  Although Ms. Fine was no longer involved in recruitment, she inquired within, confirmed that Kot was not working for Shaklee (China), and relayed this information to Mr. Nelson.  (*Id.* ¶¶ 10, 15, 17.)  Notably, Ms. Fine did not promise to inquire about any potential recruitment activities directed at Kot, to stop any discussions with any candidates employed by Melaleuca regarding potential employment by Shaklee (China), or to notify Melaleuca, Inc. in the event of any such discussions.[1]  (*Id.* ¶¶ 11-13, 21.)

---

[1] Melaleuca boldly, and without justification, accuses Ms. Fine (who is not Shaklee's General Counsel) of lying.  (Dkt. 40-1 at 18.)  However inconvenient the fact may be for Plaintiffs, Ms. Fine

On January 8, 2018, Kot became an employee of Shaklee (China).  (Decl. C. Meng, ¶ 4.)  Shaklee, the U.S. business entity, has never employed Kot.  (Dkt. 7-2 at 2.)  By January 8, 2018, Plaintiffs unquestionably knew that Kot was working for Shaklee (China), yet still failed to make the required payments to trigger the 2011 non-complete provisions.  (Dkt. 51, Decl. Kot, ¶ 16.)

After Kot left Melaleuca (China), he never solicited any Marketing Executives to join his new employer, Shaklee (China).  (*Id.* ¶ 17.)  He talked to some Marketing Executives of Melaleuca (China) following his departure, but these interactions were social in nature.  (*Id.*)  Kot never tried to convince them to leave Melaleuca (China) or any of its affiliates or to stop buying products from Melaleuca (China).  (*Id.*)

Kot has also never breached his confidentiality obligations to Melaleuca (China).  The only piece of confidential information that Plaintiffs actually allege Kot disclosed—Melaleuca (China)'s financial performance—can be found on the worldwide web, including the 2017 annual sales figure of RMB 5 billion.  (*Id.* ¶ 25; Dkt. 39 at ¶¶ 20-21; *see also* http://uprich.com/index.php?m =Index&a=article&id=5899&type=1.)

During his recruitment by Shaklee (China), Kot disclosed the 2011 Agreements, including their conditional non-compete clause.  (Decl. K. Moran, ¶¶ 6-8, Exs. B and C.)  But neither Shaklee nor Shaklee (China) received, or knew the subject or contents of, the 2010 Agreements until after this lawsuit was filed.  (Decl. K. Moran, ¶¶ 9-11; Dkt. 51, Decl. Kot, ¶ 15.)

### III.  LEGAL STANDARD

A district court should deny a request for a preliminary injunction when the moving party fails to make a clear showing of any of the following factors:  (1) it is "likely to succeed on the merits;" (2) it is "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the

---

was correct to inform Mr. Nelson that Kot did not work for Shaklee or Shaklee (China).  (*See generally* Decl. M. Fine.)  Further, even the top officers of Shaklee (China) were not aware of Kot's hire before January 7, 2018.  (Decl. C. Meng, ¶ 5.)

balance of equities tips in [its] favor;" or (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Court "must balance the competing claims of injury and must consider the effect on *each* party of the granting or withholding of the requested relief."   *Id.* (citation omitted) (emphasis added).   Because "a preliminary injunction is an extraordinary and drastic remedy," it "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 973 (1997) (emphasis in original).

Mandatory injunctions such as the one requested here are "particularly disfavored." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980).  Because the requested relief would require Shaklee to take action (including, potentially, to terminate Kot's employment with Shaklee China), rather than refrain from action, relief should be denied "unless the facts and law clearly favor the moving party." *Id.*

## IV.  ARGUMENT

### A.    Injunctive Relief Cannot Issue Because This Court Is Not an Appropriate Forum for This Litigation and Also Lacks Jurisdiction over Kot

As a threshold matter, injunctive relief would be inappropriate because this action should not proceed in the first place under the doctrine of *forum non conveniens* and because this Court lacks personal jurisdiction over Kot.  (*See* Dkt. 43-1, 47-1.)  As the U.S. Supreme Court has acknowledged in multiple cases, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93–102 (1998)).  Like personal jurisdiction, *forum non*

*conveniens* is a "non-merits" determination, and thus, both issues must be addressed before ruling on Plaintiffs' motion for preliminary injunction.[2]

As explained in Defendants' pending motions to dismiss, this dispute arises under a set of agreements expressly governed by Chinese law, and Chinese courts provide an adequate forum for its resolution. (Dkt. 43-1 at 6, 10-11; Dkt. 47-1 at 23-24.) All real parties in interest are in China, and only Melaleuca, Inc., which never even employed Kot, is located in Idaho. (Dkt. 43-1 at 11-12.) Further, this Court lacks personal jurisdiction over Kot because (1) his 2010 Agreements' Idaho choice-of-law provisions are no longer operative, if they ever were (Dkt. 47-1 at 14-19); (2) there are insufficient contacts linking Idaho to Kot, who lives and works in China (*id.* at 20-22); and (3) Kot still has not been properly served (*id.* at 24-25). In light of these issues, respectfully, this Court should not even reach the merits of Plaintiffs' claims, let alone find any likelihood that they would prevail.

**B.     Plaintiffs Have Not Met Their Burden to Show a Preliminary Injunction Should Issue**

**1.     Apart from the Threshold Issues of Jurisdiction and Forum, Plaintiffs Fail to Establish any Likelihood of Success on the Merits**

Plaintiffs have not and cannot demonstrate any likelihood of success on the merits on any of their tortious interference claims against Shaklee. To prevail, Plaintiffs must clearly show that they are likely to satisfy the elements of tortious interference with a contract against Shaklee, for which claims Plaintiffs need to prove the existence and Shaklee's knowledge of a valid and enforceable contract and intentional interference causing a breach of the same contract. *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 895 (2010).

---

[2] Although determinations regarding personal jurisdiction must precede determination of merits issues, this Court retains discretion over the order in which to resolve non-merits issues and may "bypass[] questions of . . . personal jurisdiction [in favor of *forum non conveniens*] when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Intern. Co. Ltd.*, 549 U.S. at 432.

SHAKLEE CORP.'S RESPONSE TO AMENDED MOTION FOR PRELIMINARY INJUNCTION

First, Plaintiffs' motion ignores the application of Chinese substantive law to all of its claims—not simply by operation of the China choice of law provision in the 2011 Agreements, but also because the forum having the most significant relationships to the facts alleged by Plaintiffs is indisputably China.[3]  Second, even assuming, *arguendo*, that Idaho law governs (which Shaklee disputes), because Plaintiffs cannot prove that the two 2010 Agreements are operative and enforceable, they likewise cannot prevail on the merits of a tortious interference claim premised upon their breach. As for the 2011 Agreements, Plaintiffs cannot, and do not, make a showing of likely breach—especially in light of their own decision "not to require Employee to perform the non-competition obligations" by "not pay[ing] the economic compensation for non-competition" noted above.  Finally, Plaintiffs cannot and do not establish that Shaklee was aware of the specific 2010 Agreements (or their contents) prior to the filing of this lawsuit, which itself precludes a claim of tortious interference.  Nor can Plaintiffs show that Shaklee intended in any way to interfere with the 2010 Agreements or the 2011 Agreements when their non-competition provision had not been invoked.  For these separate and independent reasons, Plaintiffs fail to establish a likelihood of success on the merits of the tortious interference claims against Shaklee.

## 2.    Plaintiffs' Contract Claims Against Mr. Kot Fail

### a.    The 2010 Agreements Are Void for any of Three Alternative Reasons

#### (1)    The 2011 Agreements Supersede the 2010 Agreements

It is well-settled that "[a] later contract supersedes [a] former contract as to inconsistent provisions."  *NLRB v. Int'l Union of Operating Eng'rs Local No. 12, AFL-CIO*, 323 F.2d 545, 548

---

[3] Pursuant to well-settled conflict-of-law authorities, Chinese law governs all four of Plaintiffs' tortious interference claims against Shaklee.  Idaho follows the "most significant relation test" as set forth in Restatement (Second) Conflict of Laws section 145 to determine the applicable substantive law with respect to tort claims.  *Grover v. Isom*, 137 Idaho 770, 772–73 (2002) (affirming application of the substantive law of the non-forum state where "the parties' relationship was centered" there); *and see* Dkt. 43-1 at 9-10.  Throughout this brief, Shaklee cites to Idaho law (alongside pertinent Chinese and Malaysian authorities) in order to respond to the arguments set forth in Plaintiffs' motion.  In so doing, Shaklee in no way concedes that Idaho law applies to Plaintiffs' claims.

(9th Cir. 1963); *see also Thomas v. Thomas*, 150 Idaho 636, 645, 249 P.3d 829, 838 (2011) ("[A] contract may be set aside by a subsequently executed contract which either deals with the subject matter of the prior contract so comprehensively as to raise the inference of substitution or is so inconsistent with the prior contract that the two cannot stand together." (citation omitted).).

Such is the case here.  The 2011 Agreements have the same titles, deal with the same subject matters (non-competition, non-solicitation, and confidentiality), and use nearly identical language to the 2010 Agreements.  Further, the 2011 Agreements are fully integrated, with each noting that it "sets forth the entire agreement and understanding between the parties respecting the matters within its scope," while clarifying that the 2011 Key Employee Non-Interference and Non-Competition Agreement does not displace the 2011 Confidentiality and Non-Solicitation Agreement, and vice versa. (Dkt. 47-3 at 17, 30.)  Melaleuca, the drafter of the 2011 Agreements, knew how to carve out those agreements it wanted to survive.  The standard integration language in each of the 2011 Agreements belies Plaintiffs' current contention that "it was, and remains, Melaleuca's intent to have two sets of agreements that exist in parallel."  (*Id.*; *and see* Dkt. 40-1 at 12.)

Plaintiffs also suggest that the 2011 Agreements cannot supersede the 2010 Agreements unless they employ the term "supersede" as the 2010 Agreements did.  But this is not required even by Idaho law.  *Thomas*, 150 Idaho at 645.  Moreover, any ambiguity in regard to the use or non-use of supersession language should be construed against Plaintiffs as the drafting party, not Kot.  *See Kunz v. Nield, Inc.*, 162 Idaho 432, 398 P.3d 165, 175 (2017); *Deer Valley Trucking Inc. v. Lease One Corp.*, No. 4:12-CV-00604-BLW, 2013 WL 4433731, at *3 (D. Idaho Aug. 16, 2013) (quoting *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 78 (9th Cir.1987)).

Finally, Plaintiffs argue that the 2010 Agreements could not have been superseded on the grounds that they were between Kot and Melaleuca, Inc., while the 2011 Agreements were between

Kot and Melaleuca (China).  (Dkt. 40-1 at 11-12.)  Not so.  On the very next page of their motion,

Plaintiffs contradict themselves, arguing that these same two entities jointly employed Kot.  (*Id.* at

13.)  Plaintiffs' effort to use their parent-subsidiary relationship as both a sword and a shield in

almost the same breath should be disregarded.  In any case, the 2011 Agreements plainly provide

that they are "made between [Mr. Kot] and Melaleuca, Inc., and . . . affiliates including [Melaleuca

(China)]."  Plaintiffs cannot ignore the effect of this express language in a form agreement they

prepared simply because it is currently inconvenient.  Further, Melaleuca, Inc.'s President has

declared on the record that Melaleuca, Inc. "exerts control over many key aspects of Melaleuca

China's employment decisions, including interviewing candidates and making hiring and placement

decisions." (Dkt. 40-2 at 5.)   Accordingly, the 2011 Agreements supersede the 2010 Agreements,

and Plaintiffs cannot prevail on any claim of tortious interference premised upon the 2010

Agreements.[4]

### (2)   The 2010 Agreements' Non-Compete Provision Is Void for Lack of Consideration

Plaintiffs also cannot show a likelihood of success on claims that Defendants breached or

interfered with the 2010 Agreements because those agreements were never binding for lack of

consideration.  *Weisel v. Beaver Springs Owners Ass'n, Inc.*, 152 Idaho 519, 526 (2012) ("To be

enforceable at law, an agreement must be supported by valid consideration.").   The 2010

Agreements state the consideration for the contract as Kot's "employment or continued

employment" with "Melaleuca, Inc."  (Dkt. 47-3, ¶ 12, Ex. C at 1; *id.* ¶ 13, Ex. D at 1.)   But Kot

was never employed by Melaleuca, Inc.  Rather, it was Melaleuca (Malaysia) that employed and

---

[4] Even if the 2010 Agreements have not been completely displaced by the 2011 Agreements, their exclusive Idaho forum selection clauses and choice of law clauses still cannot be enforced because they are inherently inconsistent and cannot coexist with the later clauses of the 2011 Agreements providing for jurisdiction in China.  *Thomas*, 150 Idaho at 645.

SHAKLEE CORP.'S RESPONSE TO AMENDED MOTION FOR PRELIMINARY INJUNCTION

paid Kot. (Dkt. 47-3, ¶ 5.)  Indeed, other than making the assertion, Melaleuca, Inc. has not demonstrated facts, clearly or otherwise, showing that it in fact was Kot's employer.

Plaintiffs' sole argument that the 2010 Agreements were supported by consideration asserts that Melaleuca, Inc. jointly employed Kot, first with Melaleuca (Malaysia) and then with Melaleuca (China). (Dkt. 40-1 at 11-14.)  But Plaintiffs offer no authority and neither is Shaklee aware of any, suggesting that the joint employer doctrine can be invoked by an employer in order to interpret a contract.  Quite apart from Plaintiffs' novel, contrived application of this doctrine, which ignores settled principles of corporate separateness, "joint employer liability . . . is a judicially-created doctrine that can be used to impose liability on one business enterprise for the employment actions of a related or subsidiary enterprise." *Wittenbrook v. Electronics Recycling Servs. Inc.*, No. 16 BE 0023, 2018 WL 501548, *4, --- N.E.3d --- (Ct. App. Ohio 2018).  Its purpose, in other words, is to expand the interpretation of the "common law concept of 'employer,' . . . in order to effectuate the FLSA's broad remedial purposes." *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983), *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985); *Ruiz v. Fernandez*, 949 F. Supp. 1055, 1064 (E.D. Wash. 2013).  The joint employer doctrine simply has no applicability to the present contract dispute.

### (3)  Even If the 2010 Agreements Were Binding, They Expired by Their Terms by at Least 2012

Assuming, *arguendo*, that the 2010 Agreements were not superseded and were supported by consideration, they still cannot support any request for preliminary injunctive relief because they have expired by their terms.  It is clear that the parties to the 2010 Agreements (which Kot signed a month before joining Melaleuca (Malaysia)) are only Kot and "Melaleuca, Inc."  Thus, when Kot's employment with Melaleuca (China) began in 2011, the 2010 Agreements expired, triggering the start of any post-employment restricted period under the 2010 Agreements. (Dkt. 47-3, ¶¶ 5-9.)

Apart from its joint-employer argument, which fails for the reasons discussed above (*see* Section IV.B.2.a(2), *supra*), Melaleuca, Inc. has not provided any facts demonstrating that it employed Kot continuously from 2010 to 2017.  Thus, the 2010 Agreements are no longer operative and cannot support Plaintiffs' request for injunctive relief.

### (4)   Any Ambiguities in the Contracts Should Be Interpreted Against Plaintiffs

A black-letter principle of contract interpretation is that ambiguities in written instruments should be construed against the drafter. *Kunz v. Nield, Inc.*, 162 Idaho 432, 398 P.3d 165, 175 (2017); *Deer Valley Trucking Inc. v. Lease One Corp.*, No. 4:12-CV-00604-BLW, 2013 WL 4433731, at *3 (D. Idaho Aug. 16, 2013) ("where language is ambiguous the court should construe the language against the drafter of the contract") (quoting *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir.1987)).  To the extent that the 2010 and 2011 Agreements were ambiguous, read alone or together, these ambiguities should be interpreted against Plaintiffs.  In this case, any ambiguity about whether the 2011 Agreement superseded the 2010 Agreement, it should be interpreted against Plaintiffs—*i.e.*, the 2011 Agreement did supersede the 2010 Agreement.  If it is ambiguous whether Melaleuca, Inc. employed Kot simultaneously with Melaleuca (China) or Melaleuca (Malaysia), they should be interpreted against Plaintiffs—*i.e.*, Melaleuca, Inc. did not employ Mr. Kot.

### b.   Kot Has Not Breached the 2011 Agreements

The 2011 Agreements purport to restrict Kot in relevant part from (1) engaging in competing employment and (2) using Melaleuca (China)'s confidential information in connection with future employment.  Plaintiffs cannot establish a breach with respect to either.

The 2011 non-compete provisions would only have gone into effect if the employer "provide[d] monthly base compensation" to Kot in exchange for his bargain not to compete, in

accordance with Chinese law.  (Dkt. 52, ¶ 4, Ex. C [Article 23 of PRC's Labor Contract Law] at 7-8; *id.* ¶ 8, Ex. G [Supreme People's Court on Several Issues Regarding Application of Laws for Trial of Labour Dispute Cases (IV), Art. 8 (2013)] at 3.)  It is undisputed that neither Plaintiff has performed this condition precedent by paying Kot to this day, more than three months after his resignation. (Dkt. 51, Decl. Kot, ¶ 16).  Where, as here, an employer has failed to provide this base compensation for three months, an employee may apply for a formal rescission of the non-compete agreement. (Dkt. 52, ¶ 8, Ex. G [Supreme People's Court on Several Issues Regarding Application of Laws for Trial of Labour Dispute Cases (IV), Art. 8 (2013)] at 3.) It simply was not possible for Shaklee to have interfered with the 2011 non-compete agreement that Plaintiffs clearly elected never to put into effect.

Plaintiffs' concerns about Kot disclosing their confidential information are at least as specious. The only piece of confidential information Plaintiffs allege Kot to have disclosed is, in fact, publicly available.  (Dkt. 47-3, ¶ 25.)  Thus, Melaleuca has not shown any corresponding breach of the 2010 or 2011 Agreements, clearly or otherwise.

### c.   The Non-Compete Provisions in the 2011 Agreements Are Overbroad and Unlawful and Thus Cannot Be Enforced

Even if Plaintiffs had invoked their right to enforce the non-competition clause in the 2011 Agreements, the non-compete provisions are overbroad and unenforceable, even under Idaho law. First, the 2011 non-compete agreement purports to restrict Kot from "holding himself out as formerly employed by Company" and from "speaking to the Competing Company's independent business owners."  (See Dkt. 47-3 at 13-14.)  *Pinnacle Performance, Inc. v. Hessing*, 135 Idaho 364, 367 (Ct. App. 2001) (attempts by employers to prohibit an employee from "doing business with an employer's clients, without regard to whether a relationship existed between the client and employee," are an impermissible, "overbroad means of protecting the employer's interest in the

goodwill developed by the employee"). Second, the clause purports to require Kot's future employer *(i.e.*, the "new company") to agree not to "hold[] out" the employee as having been formerly employed by Melaleuca. (Dkt. 47-3 at 13-14.) Plainly, Plaintiffs cannot bind Shaklee to a contract to which it is not a party. *Greater Boise Auditorium Dist. v. Frazier*, 159 Idaho 266, 273 (2015) (finding non-party to a contract was not subject to its terms). Second, the non-compete provision's geographic scope, which includes the United States although Mr. Kot had no responsibilities over that market, is unreasonably overbroad. (*See id.* at 12.) *Pinnacle Performance* 135 Idaho at 367.

The Idaho Supreme Court has determined that overbroad covenants should not be judicially revised to conform with Idaho legal standards unless the change can be implemented by taking "a 'blue pencil' approach to an unreasonable word or two," which would not be the case here: the clause would have to be completely rewritten. *Freiburger v. J-U-B Engineers, Inc.*, 141 Idaho 415, 423, 111 P.3d 100, 108 (2005). Accordingly, these covenants should be stricken in their entirety and cannot support Plaintiffs' claim for injunctive relief.

### 3.  Plaintiffs Fail to Establish That Shaklee Tortiously Interfered With any Contract

Plaintiffs also fail to establish that Shaklee interfered with any agreement between Mr. Kot and either Plaintiff. Again, Plaintiffs make no attempt to show a likelihood of proving tortious interference under applicable Chinese law. And even if Idaho law applied (which Shaklee disputes),[5] Plaintiffs still fall far short of their burden.

As discussed above, the 2010 Agreements (which purport to be governed by Idaho law) are not operative and had not even been disclosed to Shaklee before this lawsuit was filed. (Decl. K.

---

[5]  If Idaho law applied, Melaleuca would need to prove "(1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach." *Wesco Autobody Supply,* 149 Idaho at 895.

Moran ¶¶ 9-11; *see* Section IV.B.2.a, *supra*.)  Any claim that Shaklee tortiously interfered with the 2010 Agreements must fail because Plaintiffs cannot show Shaklee had prior knowledge of their contents or an intent to interfere.  Again, Shaklee could not possibly intend to interfere with an agreement of which it was not aware.  As for the 2011 Agreements, Shaklee legitimately understood that Melaleuca (China) had declined to enforce any restrictions on competition by not providing salary continuation to Mr. Kot—even though Mr. Kot's then-supervisor Mr. Felton admits he and Melaleuca, Inc. CEO's Frank VanderSloot knew that Mr. Kot might join Shaklee (China) Co. Ltd. at least a month before he started.  (Dkt. 40-2, ¶ 39.)

Moreover, even if Plaintiffs could legitimately enforce the 2011 non-competition provision (which they cannot), there is no evidence that Shaklee intended to interfere with it.  When Ryan Nelson of Melaleuca reached out to Marjorie Fine in early December 2017 to inquire whether Shaklee (China) had hired Kot, Ms. Fine made a reasonable, good faith inquiry and truthfully confirmed to Mr. Nelson that Shaklee China had not hired Kot.[6] (Decl. M. Fine, ¶¶ 8, 10, 15, 17.)

Accordingly, there is no likelihood of Plaintiffs' success as to the merits of either claim for tortious interference with contract against Shaklee for this additional reason.

### 4.  Plaintiffs' Assertions of Irreparable Harm Are Factually Unsupported, Speculative, and Legally Insufficient to Justify a Preliminary Injunction

A party seeking a preliminary injunction must also establish that it is likely—not just possible— that it will suffer irreparable harm in the absence of preliminary relief.  *DePuy Synthes Sales, Inc. v. Williams*, No. 1:17-CV-00404-REB, 2017 WL 5011880, at *6 (D. Idaho Nov. 2, 2017).  Injunctive relief "will not be issued simply to prevent the possibility of some remote future injury."  *Id.* (quoting *Winter*, 522 U.S. at 20).  "The harm cannot be speculative."  *Id.* (citing *Caribbean*

---

[6]  Indeed, as a general matter, Shaklee is sensitive to candidate concerns about disclosing to a current employer that the candidate may be exploring employment elsewhere.  Even if Ms. Fine had been aware, it would have been consistent with Shaklee's respect for candidate privacy to not disclose Mr. Kot's job search efforts to Melaleuca.  (Decl. Moran ¶ 12.)

*Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)); *see also Goldie's Bookstore v. Superior Court.*, 739 F.2d 466, 472 (9th Cir. 1984) (trial court's findings that plaintiff would lose goodwill and "untold" customers held speculative on appeal). Injunctive relief is "not warranted" when "based on a generalized threat of lost revenue, market value, and goodwill." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202–03 (9th Cir. 1980).

Here, Plaintiffs alleged harms are completely speculative. Plaintiffs have failed to show that Kot has induced, or that Shaklee caused him to induce, any employee to leave either Plaintiff's employ, or any Marketing Executive (*i.e.*, distributor) to leave either Plaintiff or join Shaklee. They have not identified a single lost sale attributable to Kot's employment with Shaklee (China). They have not identified a single piece of non-public information belonging to Plaintiffs that has been retained or used by Kot. (Dkt. 47-3, ¶ 25.) Consequently, Plaintiffs cannot show that irreparable harm would ensue unless Kot is fired from his current position or barred from communicating directly or indirectly with Shaklee or Shaklee (China).

Instead of supplying specific, competent evidence of harm, Plaintiffs rely on inapposite authorities to try to make their showing for them. Plaintiffs' reliance upon Idaho Code section 44-2704(6) is misplaced. Idaho Code § 44-2704(6) (emphasis added). In this case, no court has yet to "find" that Kot is a "key employee" or that he is in "breach of an agreement," so no rebuttable presumption of irreparable harm" has been established. Plaintiffs must actually prove that the harm is "likely" to secure an injunction. *See Solis v. Hutcheson*, No. 1:12-CV-236-EJL, 2012 WL 2151525, at *2 (D. Idaho June 13, 2012). Plaintiffs have not done so. Further, this statute is inapplicable because the 2011 Agreements, by their terms, are governed by Chinese substantive law. Even if Idaho substantive law applied, this provision, added via a 2016 amendment, does not by its terms apply retroactively to an agreement entered into before 2012. 2016 Idaho Laws Ch. 281 (H.B.

487).

Plaintiffs' reliance on *Ocean Beauty Seafoods, LLC v. Pacific Seafood Group Acquisition Co., Inc.*, 648 Fed. Appx. 709 (9th Cir. 2016), cannot salvage their claims against Shaklee.  *Ocean Beauty* applied Oregon substantive law to find irreparable harm in connection with the violation of a non-compete provision that had been narrowed in scope to cure its overbreadth as determined in an earlier appeal that found the employee had breached the agreement.  *Id.* at 710–11.  Critically, the amended provision in *Ocean Beauty* was limited geographically to a 100-mile radius and did "not bar [employee] from working in his area of expertise."  *Ocean Beauty Seafoods*, 648 Fed. Appx. at 711.  But here, by comparison, Oregon law does not apply; there has been no prior finding of breach; the proposed restriction would in fact bar Kot from pursuing his chosen vocation anywhere in China, the U.S. and beyond; and Melaleuca has not stipulated to a narrower restriction.

*MWI Veterinary Supply Co. v. Wotton*, 896 F.Supp.2d 905 (D. Idaho 2012), is also inapposite.  That case enforced a contract provision stipulating to a finding of irreparable harm in an asset purchase agreement bilaterally negotiated by two "sophisticated" business entities, both represented by counsel.  *MWI*, 896 F. Supp. 2d at 908, 914.  By contrast, such a provision in a form agreement entered into with an unrepresented employee is not entitled to deference.

Because Plaintiffs have failed to establish irreparable harm by a clear or any other showing, a preliminary injunction cannot issue.

### 5.    The Balance of Equities Favors Defendants

In considering a request for preliminary injunctive relief, a court must balance the harms that the injunction might cause the *defendant* against the plaintiff's threatened injury.  *Earth Island Institute v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010).  Although Melaleuca contends that a preliminary injunction would "merely return the parties to the status quo," this is incorrect.  Indeed, the very reason that mandatory preliminary injunctions (such as one requiring an employee to be

fired) are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party" is because they necessarily alter the status quo. *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

Here, the requested injunction would unduly harm Shaklee because the requested relief extends far beyond, and has no reasonable relationship to, the harm Plaintiffs claim they might suffer in the future.  For example, it would prohibit Shaklee (China) from employing Kot outright, rather than simply and appropriately restricting Kot and Shaklee from using Plaintiffs' confidential information or soliciting Plaintiffs' Marketing Executives (both of which Shaklee would stipulate to pending a merits determination of Plaintiffs' claim).   Having chosen not to invoke the noncompetition provision, Plaintiffs would now have this court disrupt a competitor's entire business operation.  Likewise, the injunction would prohibit Shaklee and its subsidiaries from even mentioning Kot's name in a non-public setting.  Considering the speculative showing of harm made by Plaintiffs, the resulting intrusion upon Shaklee's free speech rights cannot be justified.  *Alpha Theta of Alpha Delta PI Bldg. Ass'n v. Pacific Northwest Regional Council of Carpenters*, No. C09–1306RSL, 2009 WL 3064688, *4 (W.D. Wash. Sept. 23, 2009) (an order barring future speech, without limitation, "comes with a 'heavy presumption' against its constitutional validity," and a finding of overbreadth on First Amendment grounds alone warrants its dissolution) (dissolving TRO enjoining labor union from picketing outside plaintiff's sorority house) (quoting *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).  As for Kot, he risks losing his ability to pursue his chosen profession anywhere in his home country, and to support himself and his family, risks that are far more significant than the marginal, unsupported harm of which Plaintiffs complain.

Finally, granting a preliminary injunction would effectively sanction a scheme to deprive a Chinese citizen of the protections afforded by Chinese law to protect employees working in China,

including the statutorily required compensation in exchange for a non-compete.  Similarly, issuing a preliminary injunction would also circumvent Malaysian law that "a covenant in restraint of trade," such as an non-compete provision, is "void under [section] 28 of [its Contract] Act [1950]."  (Dkt. 47-2, ¶ 2, Ex. A (*Vision Cast Sdn. v. Dynacast Melaka Sdn. Bhd.* [2015] 1 MLJ 424) at 15.)  The Court should not countenance such anti-competitive and heavy-handed behavior by Plaintiffs.

### 6.   Plaintiffs Have Not Made a "Clear Showing" That the Preliminary Injunction Is in the Public Interest

The public interest would be disserved by the enforcement of an unduly broad and statutorily voidable contract.  *Naegeli Reporting Corp. v. Petersen*, 3:11–1138–HA, 2011 WL 11785484, at *7 (D. Or. Dec. 5, 2011); *Stuber v. CGH Technologies, Inc.*, C/A No. 03:07-cv-3094-JFA, 2008 WL 11349816, at *3 (D.S.C. Jan. 29, 2008) ("the public interest cannot be deemed to favor" the enforcement of unenforceable contracts).  Moreover, even *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002), relied on by Plaintiffs, recognizes "the significant public interest in upholding First Amendment principles."

Finally, as set forth above, it would be in the public interest not to interfere with the application of Chinese and Malaysian laws applying to work performed within those jurisdictions. (*See* Section IV.B.5, *supra*.)  Accordingly, injunctive relief would not serve the public interest.

### V.  CONCLUSION

For each of the foregoing reasons, Shaklee respectfully requests that the Court DENY Plaintiffs' Amended Motion for Preliminary Injunction.

DATED THIS 6th day of March, 2018.

PARSONS BEHLE & LATIMER

By */s/ Brook B. Bond*
    Brook B. Bond
Attorneys for Defendant
Shaklee Corporation

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 6th day of March, 2018, I electronically filed the within and foregoing instrument with the Clerk of the Court using the CM/ECF system, which caused the following parties and counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

        Richard R. Friess, Attorneys for Melaleuca, Inc.
        friess@thwlaw.com

        Sean J. Coletti, Attorney for Kot Nam Shan
        seancoletti@hopkinsroden.com

        Brian M. Lutz, Attorneys for Melaleuca, Inc.
        BLutz@gibsondunn.com

        Stephen C. Whittaker, Attorneys for Melaleuca, Inc.
        cwhittaker@gibsondunn.com

*/s/ Anna Ferrari*
Anna Ferrari

CERTIFICATE OF SERVICE                                 — 1