UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELALEUCA, INC., an Idaho corporation, and MELALEUCA (CHINA) WELLNESS PRODUCTS CO., LTD., a wholly-owned subsidiary of Melaleuca, Inc., | Case No. 4:18-cv-00036-DCN **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | |
| v. | |
| KOT NAM SHAN, an individual, and SHAKLEE CORP., a Delaware corporation, | |
| Defendants. | |

## I. OVERVIEW

There are three Motions pending before the Court. First, Plaintiffs Melaleuca, Inc.

("Melaleuca") and Melaleuca (China) Wellness Products Co., Ltd. ("Melaleuca China")

have moved for a preliminary injunction to, in general, enjoin Defendant Kot Nam Shan

("Kot") from working for or with Defendant Shaklee Corporation ("Shaklee") while this

litigation is ongoing. Dkt. 40. In response, Shaklee filed a Motion to Dismiss for Forum

Non Conveniens (Dkt. 43) and Kot filed a Motion to Dismiss on several grounds (Dkt.

47). The Court set an expedited briefing schedule for these three Motions and then held

oral argument on March 23, 2018. For the reasons set forth below, the Court finds good cause to GRANT Kot's Motion to Dismiss on personal jurisdiction grounds and forum non conveniens grounds. Accordingly, the Court DISMISSES the claims Plaintiffs have asserted against Kot and directs Plaintiffs to refile it claims against Kot (and any other pertinent party, such as Shaklee China) in China. The Court also finds it must DENY Shaklee's Motion for Forum Non Conveniens. Finally, the Court DENIES the Motion for Preliminary Injunction as moot.

## II. BACKGOUND

### A. Factual Background

Melaleuca is an international consumer goods company that formulates, manufactures, and markets unique nutritional, personal care, cosmetic, and household products. Melaleuca is based in Idaho Falls, Idaho, but sells its products in 18 countries. Melaleuca has formed wholly owned subsidiaries in many of the foreign countries in which it sells its products. For example, Plaintiff Melaleuca China is Melaleuca's subsidiary in China.

Melaleuca has invested significant time and resources in developing its distribution operations and sales in China, "a key international market for Melaleuca." The relationships between Melaleuca's corporate executives and independent marketing executives in China is crucial to Melaleuca's growth and success in China. Accordingly, Melaleuca's competitors in China have tried to poach Melaleuca's corporate executives in order to exploit their relationships with Chinese marketing executives.

In 2010, Melaleuca hired Kot, a citizen of Hong Kong, as Director of Sales with Melaleuca Southeast Asia Malaysia Sdn. Bhd. ("Melaleuca Malaysia"). On April 26, 2010, Kot and Melaleuca entered into a "Key Employee Non-Interference and Non-Competition Agreement" ("2010 Non-Competition Agreement"). Dkt. 40-5. Melaleuca Malaysia was not a party to this Agreement. Under this Agreement, Kot was prohibited from, among other things, promoting direct competitors of Melaleuca, speaking with a direct competitor's "independent business owners or sales representatives," and representing himself as a former Melaleuca employee for a 12-month period following his "Termination Date." *Id.* at 3–4. The Agreement specifically identified Shaklee as a direct competitor of Melaleuca. *Id.* On April 26, 2010, Kot and Melaleuca also entered into a "Confidentiality and Non-Solicitation Agreement" (the "2010 Confidentiality Agreement") (collectively "2010 Agreements").[1] Dkt. 40-6. Among other things, the Confidentiality Agreement prohibits Kot from sharing certain identified categories of Melaleuca's confidential and proprietary information. *Id.* Both of these Agreements provide that they are governed by the laws of the State of Idaho and that "the courts of the Seventh Judicial District Court of the State of Idaho or of the United States District Court for the District of Idaho" have "exclusive jurisdiction" over "any action arising out of or in any way related to the interpretation and enforcement of the Agreement." Dkts. 40-5, at 5; 40-6, at 4.

---

[1] Both of the 2010 Agreements state that they are agreements between Melaleuca, Inc. and Kot. However, only Kot signed each of the two Agreements.

In 2011, Melaleuca China hired Kot as the Assistant General Manager of Melaleuca China and, later that year, promoted him to General Manager of Melaleuca China. On April 12, 2011, Kot entered into a Key Employee Non-Interference and Non-Competition Agreement ("2011 Non-Competition Agreement") and a Confidentiality and Non-Solicitation Agreement ("2011 Confidentiality Agreement") (collectively "2011 Agreements") with Melaleuca China.[2] Like with the 2010 Non-Competition Agreement, the 2011 Non-Competition Agreement, among other things, prevented Kot from promoting direct competitors of Melaleuca, speaking with a direct competitor's "independent business owners or sales representatives," and holding himself out as a former Melaleuca employee, but this time for a period of 18 months after his "Termination Date." Dkt. 40-7, at 3-6. The 2011 Agreements are "governed in all respects by the laws of the People's Republic of China" and provide that "[t]he parties agree to submit to the non-exclusive jurisdiction of the Courts of the People's Republic of China." Dkts. 40-7, at 8; 40-8, at 5. The 2011 Non-Competition Agreement also required Melaleuca China to pay Kot a monthly base compensation in order to enforce the non-compete obligation for the "Period of Restriction."[3]

---

[2] The 2011 Agreements are signed by Melaleuca China and, at the beginning, state the agreement is between Melaleuca China and Nelson Kot. However, the 2011 Agreements then provide as follows: "This . . . Agreement . . . is made between the Employee and Melaleuca, Inc., a corporation incorporated under the law of the state of Idaho in the United States, and all of Melaleuca, Inc.'s successors, assigns, current and former, local and international affiliates including Melaleuca (China) Wellness Products Co., Ltd." Dkts. 40-7, at 2, 40-8, at 2.

[3] The 2011 Non-Competition Agreement specifically provides:

> For the purpose of protecting the Employers legitimate business interest, the Employer during the Period of Restriction, shall provide monthly base

On September 19, 2017, Kot informed his supervisor, Jerry Felton, that he would be resigning from his position "to help his wife expand her bridal boutique business into China and other markets and to begin importing and selling luxury cars." Dkt. 40-2, at 14. Based on Kot's representations, Melaleuca China did not provide Kot with the monthly base pay the 2011 Non-Competition Agreement requires to trigger Kot's non-compete restrictions.

In December 2017, Melaleuca's CEO, Frank L. VanderSloot, received an anonymous email with a subject line indicating that Kot had joined Shaklee as its general manager. *Id.* at 15. Jerry Felton, President of Melaleuca's International Department, contacted Kot directly to ask him if he had joined Shaklee. Kot denied that he had and insisted that he planned only to work on his wife's bridal business and his luxury car import business. Ryan Nelson of Melaleuca also reached out to a senior Shaklee representative, Marjorie Fine, regarding Kot. Fine denied that Shaklee had hired Kot. The parties dispute whether Fine made any statements regarding Shaklee's recruitment of Kot.

---

compensation for non-competition to the Employee every month . . . . In the event of termination or expiry of the Contract, Employer has the right to choose whether to require Employee to perform the Non-Competition obligations during the Period of Restriction. If Employer opts not to require Employee to perform the non-competition obligations during the Period of Restriction, Employer shall not pay the economic compensation for non-competition noted above.

Dkt. 40-7, at 3.

On January 8, 2018, Kot joined Shaklee (China) Co. Ltd. ("Shaklee China").[4] That same day, Melaleuca received WeChat messages from one of its Marketing Executives that contained photographs of Kot on stage at a Shaklee event, with Shaklee personnel, and shaking hands with the CEO of Shaklee. Later that day, Felton received a text message from Kot stating that he had joined Shaklee. Melaleuca's Senior Vice President Danny Xu also received a phone call from Kot in which Kot stated that he was going to be introduced as a Shaklee employee. Thereafter, Plaintiffs assert, Kot engaged in conduct prohibited by the 2010 and 2011 agreements, including meeting with Shaklee employees and sales representatives, holding himself out as a former Melaleuca employee, sharing confidential information about Melaleuca, and contacting Melaleuca sales representatives in an attempt to get them to leave Melaleuca for Shaklee.

## B. Procedural Background

Melaleuca filed suit against Kot and Shaklee in the Seventh Judicial District of the State of Idaho, in and for the County of Bonneville, on January 17, 2018. Concurrently therewith, Melaleuca filed a Motion for Temporary Restraining Order and Expedited Discovery. The next day, the state court issued an order granting the Motion for Temporary Restraining Order and Expedited Discovery. Melaleuca then posted a cash bond of $10,000 in accordance with the order. The state court also scheduled a hearing on the Motion for Preliminary Injunction for February 6, 2018.

---

[4] Shaklee China is a subsidiary of Shaklee. *See* Dkt. 43-1, at 4. Plaintiffs have not named Shaklee China as a defendant in this case because, they argue, only Shaklee tortiously interfered with Kot's employment contracts.

Shaklee removed the action to this Court based on diversity jurisdiction on January 25, 2018. On January 29, 2018, Defendants filed a series of motions. Counsel appearing for Kot filed a Motion to Dismiss for a variety of reasons. Dkt. 6. Shaklee filed a Motion to Dismiss for Forum Non Conveniens. Dkt. 7. Shaklee also filed a Motion to Dissolve or Stay or Modify the state court's order granting the Motion for Temporary Restraining Order and Expedited Discovery. Dkt. 8. Finding it appropriate to do so, the Court held a telephonic scheduling conference on January 31, 2018, to discuss a schedule for briefing the pending Motions, including a soon to be filed Motion for Preliminary Injunction, and how the state court order affected these proceedings. After a full discussion, the Court found it appropriate to first determine whether any expedited discovery (as Melaleuca had requested) was appropriate and necessary before setting a briefing schedule for the other pending Motions. Accordingly, the Court set an expedited briefing schedule for Melaleuca's Motion for Expedited Discovery. Dkt. 16. The Court also extended the temporary restraining order put in place by the state court for an addition 14 days. Dkt. 20. The Court ultimately denied the Motion for Expedited Discovery on February 14, 2018. Dkt. 29. It then set an expedited briefing schedule for the three pending motions. *Id.* When the temporary restraining order expired a few days later, the Court declined to extend it. Dkt. 38.

Then, on February 19, 2018, Melaleuca, now in conjunction with Melaleuca China, filed an Amended Complaint. Dkt. 39. The Amended Complaint sets forth seven causes of action: (1) breach of the 2010 Non-Competition Agreement (against Kot) (2) breach of the 2010 Confidentiality Agreement (against Kot); (3) tortious interference

with 2010 Agreements (against Shaklee); (4) breach of the 2011 Non-Competition Agreement (against Kot); (5) breach of the 2011 Confidentiality Agreement (against Kot); (6) tortious interference with the 2011 Agreements (against Shaklee); and (7) fraud in the inducement with regard to the 2011 Non-Competition Agreement (against Kot).

The Amended Complaint mooted the two pending motions to dismiss. Plaintiffs also filed an Amended Motion for Preliminary Injunction. Dkt. 40. After Skaklee refiled its Motion to Dismiss for Forum Non Conveniens (Dkt. 43), and Kot refiled his Motion to Dismiss (Dkt. 47), the Court reset an expedited briefing schedule for all three Motions. Dkt. 49. Significantly, Kot's Motion asserts that this Court should dismiss this case for four reasons: (1) the Court lacks personal jurisdiction over him; (2) Plaintiffs have failed to join Shaklee China, an indispensable party; (3) forum non conveniens; and (4) insufficient service of process. Dkt. 47. The Court scheduled and held oral argument on the three pending Motions on March 23, 2018. The Court starts its analysis with the Motions to Dismiss for Forum Non Conveniens asserted by both Kot and Shaklee.

## III. DEFENDANTS' MOTIONS TO DISMISS FOR FORUM NON CONVENIENS

### A. Legal Standard

Under the doctrine of forum non conveniens, the Court has discretion to dismiss a case where "litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). In determining whether to grant a motion for forum non conveniens, the Court must examine: "(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Id.* "The defendant bears the burden of proving the

existence of an adequate alternative forum." *Id.* (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983)). "Ordinarily, a plaintiff's choice of forum will not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in a foreign country." *Id.* at 1145.

The Ninth Circuit advises that forum non conveniens is "an exceptional tool to be employed sparingly, [not a] . . . doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). "The doctrine of forum non conveniens is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1124 (9th Cir. 2011). However, ultimately "[a] forum non conveniens determination is committed to the sound discretion of the district court." *Lueck*, 236 F.3d at 1143. In analyzing a motion to dismiss for forum non conveniens, the Court must accept as true the facts alleged by Plaintiffs. *See Carijano*, 643 F.3d at 1122 (citing *Vivendi SA v. T–Mobile USA, Inc.*, 586 F.3d 689, 691 n. 3 (9th Cir.2009)) (accepting the facts alleged in plaintiff's complaint when reviewing defendant's motion to dismiss for forum non conveniens).

The Ninth Circuit has also directed district courts to "make a choice of law determination in considering whether to dismiss the action [for forum non conveniens]." *Lueck*, 236 F.3d at 1143. "However, the choice of law analysis is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act." *Id.* at 1148 (citation omitted).

Thus, "[t]he purpose of a choice of law inquiry in a forum non conveniens analysis is [only] to determine if one of these statutes would apply." *Id.*

### *B. Analysis*

<u>1. Choice of Law Determination</u>

The Court first addresses the choice of law analysis. The Court notes that Plaintiffs have in no way argued that a United States statute mandates venue in a United States district court. Thus, this choice of law analysis is "not determinative." *Id.* Nevertheless, the choice of law determination may help guide the Court's subsequent analysis, so the Court undertakes such a determination here.

"Federal courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (citation omitted). Idaho applies the Restatement (Second) Conflict of Laws including the "most significant relation test" as set forth in section 145, *Grover v. Isom*, 53 P.3d 821, 823–24 (Idaho 2002), and section 187 regarding choice of law clauses, to determine the applicable law. As noted previously, Melaleuca asserts three torts and four contract claims in this case.

In tort cases, Idaho courts consider the following facts in making their choice of law determination: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Grover*, 53 P.3d at 824. The most important factor is where the injury occurred. *Id.*

In support of their claims for tortious interference with contract against Shaklee, Plaintiffs allege that Shaklee knew about the 2010 and 2011 Agreements and intentionally interfered with them by inducing Kot to work for Shaklee and lying to Melaleuca employees about their actions in recruiting and hiring Kot. In support of their claim for fraud in the inducement, Plaintiffs allege that Kot intentionally lied to them about his future employment plans when he left Melaleuca China's employment so that Melaleuca China would decline to pay him a monthly salary, and, in doing so, free him of any non-competition obligations under the 2011 Agreement.

The relevant factors favor applying Chinese law to these three torts. First, Melaleuca has repeatedly alleged that Kot's breach of the Agreements harmed its business relationships, operations, and sales in China. Thus, Plaintiffs' injury, as alleged, occurred, and continues to occur, in China. Second, most of the conduct causing the injury—Shaklee China's employment of Kot and Kot's alleged intentional lies about his future plans—occurred in China. The Court notes, however, that Plaintiffs have alleged that some of Shaklee's American employees were involved in the tortious interference claims by recruiting Kot and lying to Melaleuca's employees about their interest in Kot. Presumably, these actions took place in California, where Shaklee's principal place of business is located. Third, Kot's former employer—Melaleuca China—and Kot's apparent current employer—Shaklee China—are located in China. It is true that Melaleuca is incorporated in Idaho and Shaklee is incorporated in Delaware with its principal place of business in California. However, the locations of these two parties do not outweigh the locations of the other, arguably, more relevant parties, which are all

located in China. Fourth, the parties' relationships, including Kot's employment

relationships with the multiple corporations in this case, and the corporations'

relationships as direct competitors, are all centered in China. Based on these factors, in

particular, the place the injury occurred, the Court finds Chinese law applies to the three

tort claims.

In contract cases, courts generally defer to the parties' agreed upon choice of law.

*Carroll v. MBNA Am. Bank*, 220 P.3d 1080, 1084 (Idaho 2009) (outlining exceptions, not

applicable here, when Idaho courts will not apply a contract's chosen law). The 2010

Agreements explicitly provide that they are governed by Idaho law while the 2011

Agreements explicitly provide that they are governed by Chinese law. Without any legal

authority directing the Court to act otherwise, it will apply Idaho law to the 2010

Agreements and Chinese law to the 2011 Agreements.

## 2. Adequate Alternative Forum

The Court next considers whether an adequate alternative forum is available to the

plaintiff. An alternative forum is adequate if "defendants are amenable to service of

process in the foreign forum" and if "it provides the plaintiff with a sufficient remedy for

his wrong." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). Dismissal

is not appropriate in the rare circumstances "where the alternative forum does not permit

litigation of the subject matter of the dispute, such that the remedy provided by the

alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all."

*Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (internal

quotation marks and citation omitted). In *Lockman Foundation*, the Ninth Circuit rejected

the plaintiff's arguments that Japan would be an inadequate forum because (1) "there is no pretrial discovery in Japan;" (2) there is a "lack of jury trials in Japan;" (3) "Japanese appellate courts exercise de novo review of facts as well as law;" and (4) "it would be unable to litigate its RICO and Lanham Act claims." *Id.* This last point is significant. The *Lockman Foundation* court explained that "[e]ven if the RICO and Lanham Act claims were unavailable in Japan," "Lockman ha[d] not shown that possible recovery on the other tort and contract claims would be so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 768–69 (internal quotation marks omitted).

Plaintiffs argue that China is an inadequate forum because it does not recognize a claim for tortious interference with contract. Plaintiffs cite a declaration Shaklee China submitted in a case in Utah state court in which its Chinese legal expert stated Chinese law does not specifically recognize the tort of tortious interference with contract. The declaration also acknowledged that Chinese law "does recognize claims characterized as 'unfair competition dispute' and 'torts dispute,' and in practice such claim may cover conduct generally described as tortious interference with contract." Dkt. 61-2, at 87. However, significantly, the claim must be "accompanied by allegations that the tortious interferences occurred with the objective of the interfering party obtaining or using the business secrets of the party bringing the unfair competition dispute." *Id.*

Plaintiffs have, generally, asserted such a claim here. Thus, it appears that Plaintiffs could assert a claim based on the facts giving rise to their tortious interference claim and recover in a Chinese court applying Chinese law. Nevertheless, even if the tortious interference claim was unavailable in China, China could still be an adequate

alternative forum because, like in *Lockman Foundation*, Plaintiffs have "not shown that possible recovery on the other tort and contract claims would be so clearly inadequate or unsatisfactory that it is no remedy at all." 930 F.2d at 769. The contract claims are the heart of this case and Plaintiffs could recover all of the damages they are entitled to under the contract claims alone—if they succeed on those claims.

In addition, the Court agrees with Defendants that if Plaintiffs truly doubted the adequacy of China as an available forum, they would not have submitted to the jurisdiction of those courts and stipulated to the application of Chinese law in the 2011 Agreements.

Significantly, Plaintiffs also argue that China is not an adequate alternative forum because Shaklee has not stated that it is "amenable to service of process in the foreign forum." This is accurate; Shaklee has not stated it is amenable to service of process in China. However, Kot is amenable to service of process in China. Dkt. 67, at 10. Moreover, Shaklee indicated at oral argument that Shaklee China, Kot's current employer and its subsidiary, is amenable to service of process in China. Moreover, Shaklee has stipulated that it will make all of its employees available as witnesses for any litigation in China.

Shaklee, citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 & n.22 (1981), argues that Plaintiffs are incorrect in stating Shaklee *must* express amenability to process in China to succeed on its Motion to Dismiss for Forum Non Conveniens. *Piper* provides:

> At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other

jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied.

*Id.* (internal citation omitted).

The Court disagrees with Shaklee. Piper and subsequent Ninth Circuit case law indicate the moving defendant has the burden and must show it is amenable to process in the alterative forum in order for the Court to deem that forum adequate. *See Carijano*, 643 F.3d at 1225 ("An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy."); *City of Almaty v. Khrapunov*, 685 F. App'x 634, 635 (9th Cir. 2017) (finding district court abused its discretion in concluding "that Switzerland would provide an adequate alternative forum," in part because "Defendants did not agree to submit to service of process in Switzerland, and they failed to present evidence on this issue"). Shaklee has failed to identify any legal authority that states an alternative forum is adequate if another entity, such as a subsidiary, is amenable to service of process in the alternative forum. Finally, the Court has no evidence that Shaklee China is actually amenable to service in China. Shaklee's statement alone will not suffice to meet Shaklee's burden.

This issue does not end the inquiry. Kot has filed his own motion to dismiss for forum non conveniens and he has established China is an adequate alternative forum (because he is amendable to service of process there). The Court must, therefore, examine the public and private interests at stake.

<u>3. Private and Public Interests</u>

Here, the Court considers whether "the private and public interests clearly point towards trial in [China]." *SpeedConnect LLC v. Idaho Falls Wireless P'ship*, 960 F. Supp. 2d 1114, 1125 (D. Idaho 2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (D. Idaho 2013)). Shaklee faces a heavy burden to overcome the "strong presumption in favor of the plaintiff's choice of forum." *Id.*

*a. Private Interest Factors*

The factors relating to the private interests of the litigants include:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir. 2009). The parties in this case reside in both China and the United States. Kot lives in China, along with employees (in particular, Marketing Executives) from both Melaleuca China and Shaklee China, who could be potential witnesses in this case. However, two of Melaleuca's key witnesses, Felton and Nelson, reside in Idaho, and several of Shaklee's witnesses, including Shaklee CEO Roger Barnett, reside in California.

With regard to the witnesses in China, Melaleuca states that it plans to obtain their testimony "through affidavits and will agree to make its witnesses available for depositions in Hong Kong at the convenience of Defendants." Defendants challenge this plan, stating that "China does not permit attorneys to take depositions in China for use in

foreign courts. Under its Declarations and Reservations to the Hague Evidence Convention and subsequent diplomatic communications, China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention." *See* U.S. Dep't of State— Bureau of Consular Affairs < https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html>. This point is persuasive. This policy could greatly hinder or completely block the parties' efforts to depose witnesses or gather other evidence in China in this case.

However, along a similar vein, a Chinese court cannot compel any executive or employees residing anywhere in the United States to appear as witnesses in a Chinese civil action. This could deprive Plaintiffs of the trial testimony of Shaklee employees, such as Roger Barnett. However, Shaklee has stipulated that it will make its employees available as witnesses if this case is litigated in China.

Melaleuca also insists that the key documentary evidence is within its control in Idaho, and that the parties can easily exchange any documentary evidence located in China through electronic discovery. Further, Melaleuca maintains that the parties to this litigation can procure evidence from third-parties "through procedures for international third-party discovery, such as those under the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters." *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1208 (9th Cir. 2009). This argument appears to go both ways. It seems that at

least some physical evidence is in China and the parties could easily send any documentary evidence in Idaho to China through electronic discovery.

The Court also acknowledges that the parties have already spent a significant amount of time and money on translating all of the Chinese evidence into English so counsel and the Court can understand it. This factor cuts both ways, but considering most of the events took place in China and primarily involve Chinese companies, the Court finds this factor tips in favor of litigating in China.

Moreover, although none of the parties have directly addressed the issue, the Court notes that all evidence related to damages is located in China. Melaleuca argues Kot's breach of his employment contracts is hurting its business relationships, goodwill, and sales in China. These damages can only be assessed in China.

Next, Plaintiffs argue a United States Court could not enforce a judgment against Shaklee entered by a court in China. While true, the Court finds this factor carries little weight. Plaintiffs will be able to enforce a Chinese judgment against Kot and Shaklee China in China. This judgment could provide all the relief to which Plaintiffs are entitled.

Finally, Plaintiffs argue that because the parties have already obtained counsel in the United States and this Court is familiar with the facts, this Court should not dismiss the case. The Court declines to give these factors weight. The only reason the parties have U.S. counsel and this Court is familiar with this case is because Melaleuca chose to file this case in Eastern Idaho. In other words, these factors only reinforce Plaintiffs' choice of forum without regard to the public and private interests and the practicality of that choice.

*b. Public Interest Factors*

The public factors to be considered include:

> (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum.

*Boston Telecomms.*, 588 F.3d at 1211 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)).

First, Idaho has a limited interest in this lawsuit. It is true that Melaleuca is based in Idaho Falls. However, Melaleuca has failed to show how this case "specifically affects Idaho markets." *SpeedConnect*, 960 F. Supp. 2d at 1127. In contrast, for all of the events relevant to this action, Kot worked in China, Melaleuca has repeatedly stated that Kot's breach of the Agreements has affected it relationships, operations, and sales in China—not in Idaho—and the outcome of this dispute will determine whether a resident of China can work for a Chinese company. Thus, China has a much greater local interest in this lawsuit.

Second, as discussed previously, Idaho's choice of law rules indicate that Chinese law applies to the tort claims in this case. The Court is not familiar with Chinese law and, accordingly, this factor weighs in favor of dismissal. In addition, the Court has some concerns that the 2010 Agreements—which are governed by Idaho law, and which list Idaho as the forum for dispute resolution—may in fact be void or may have expired. As explained in the next section, these contracts are the primary basis upon which this Court has personal jurisdiction over Kot. In contrast, the 2011 Agreements—which are governed by Chinese law and which list China as the forum (albeit non-exclusive forum)

for dispute resolution—appear to be valid, enforceable contracts. These facts also weigh in favor of dismissal.

The final three public interest factors do not clearly weigh in favor of or against litigating this case in China. There is no indication that this Court is more congested than Chinese courts, or that hearing the suit here would impose a greater burden on local courts and juries than hearing the suit in China.[5] Finally, both sides will inevitably incur great costs if forced to resolve the dispute here or in China. The Court cannot definitely state which option would be most cost-effective.

When considered as a whole, the private and public interest factors strongly favor dismissing this action so the parties can refile it in China. Most significantly, Chinese law applies to most of the claims in this action. The Court has serious questions about Plaintiffs' likelihood of success on the claims for breach of the 2010 Agreements—the only claims to which Idaho law would apply. The Court has qualms about allowing these questionable claims to act as an anchor holding the entire case here. This Court is not equipped to apply Chinese law and would have to rely heavily on outside legal experts to assist it in determining what the law is and how to apply it. Second, China has a far greater local interest in this dispute than Idaho does. Third, China is the far more cost-effective and efficient forum. The Court finds it notable that China does not allow

---

[5] The Court does acknowledge that Kot has already initiated a labor arbitration action in China against Melaleuca China and that Kot has already received a Notice of Hearing in the Shanghai Labor and Human Resources Dispute Arbitration Commission. *See* Dkts. 70, 73. The Court finds it appropriate to take judicial notice of documents Kot submitted regarding this action under Federal Rule of Evidence 201.

attorneys to depose witnesses or gather evidence for use in this Court without going through Chinese central authority. There is a substantial number of witnesses and other evidence (including evidence of damages) that the parties can only obtain in China. It seems this policy is going to hinder this litigation considerably if it is tried here in Idaho. Besides the delay, the parties will incur significantly more costs gathering evidence in China, translating it, and presenting it to this Court, than if the parties litigate this case in China.

As the Court noted previously, only Kot has indicated he is amenable to service of process in China.[6] For all of the reasons outlined above, the Court finds good cause to grant Kot's Motion to Dismiss for Forum Non Conveniens. The Court will, therefore, dismiss the claims Plaintiffs have asserted against Kot and direct the parties to refile this case against Kot—and Shaklee China—in China.

After taking this action, the Court still has before it two claims for tortious interference of contract Plaintiffs asserted against Shaklee. At this juncture, it may be appropriate to stay these claims. However, the Court will not take such action sua sponte.

## IV. KOT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The Court turns briefly to Kot's Motion to Dismiss for Lack of Personal Jurisdiction.

---

[6] Shaklee Corp., through counsel of record, stated at oral argument that Shaklee China is amenable to service but Shaklee China is not a party to this lawsuit and this Court has no jurisdiction over it. Shaklee Corp. cannot bind Shaklee Corp. under these circumstances.

*A. Legal Standard*

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). "In order for an Idaho court to exert jurisdiction over an out-of-state defendant, two criteria must be met; the act giving rise to the cause of action must fall within the scope of [Idaho's] long-arm statute and the constitutional standards of due process must be met." *Saint Alphonsus Reg'l Med. Ctr. v. State of Wash.*, 852 P.2d 491, 494 (Idaho 1992). "Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1010 (D. Idaho 2010).

"The Due Process clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1121 (2014). A nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Since the Supreme Court's "seminal decision in *International Shoe*, [its] decisions have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court*, __ U.S. __, 137 S. Ct. 1773, 1779–80 (2017). "For an individual, the paradigm forum for the exercise of *general jurisdiction* is the individual's

domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.*, (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* "Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting *Goodyear*, 564 U.S. at 919).

"There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food*, 303 F.3d at 1111). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "[T]he burden then shifts to the defendant to 'present a compelling case' that the exercise of

jurisdiction would not be reasonable.'" *Id.* (quoting *Burger King Corp. v Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* Thus, the Court need only determine whether the Plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.*

## B. Analysis

Plaintiffs argue Kot consented to personal jurisdiction in Idaho by signing the 2010 Agreements. "[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005). When such contracts "have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).

Defendants argue that the 2010 Agreements are void because (1) the 2011 Agreements supersede the 2010 Agreements; (2) the 2010 Agreements lack consideration; and (3) the 2010 Agreements have expired. However, determining whether the 2010 Agreements are void would require findings of fact, which are improper at this stage. Thus, because Plaintiffs have pled that the 2010 Agreements are valid and Kot

consented to jurisdiction in Idaho regarding any dispute over those contracts, the Court must accept those facts as true. These facts establish a prima facie case of personal jurisdiction over Kot with regard to the 2010 Agreements.

This does not end the inquiry. The 2010 Agreements specifically provide: "the courts of the Seventh Judicial District Court of the State of Idaho or of the United States District Court for the District of Idaho for any action arising out of or in any way related to the interpretation and enforcement of this Agreement." This clause specifically limits Kot's consent to "any action arising out of or in any way related to the interpretation and enforcement of this Agreement." Thus, Kot has not consented to personal jurisdiction in Idaho for the remainder of the claims. If the Court does not find another basis for personal jurisdiction, the Court must dismiss the claims for breach of the 2011 Agreements and the fraud claims for lack of personal jurisdiction.

The 2010 Agreements aside, Plaintiffs argue this Court still has personal jurisdiction over Kot. Plaintiffs cite the following contacts that Kot has had with Idaho: Kot attended Melaleuca conventions in the United States every year between 2010 and 2017 (and typically visited Melaleuca's headquarters in Idaho during those trips); Kot visited Idaho several other times and on these trips he "accessed valuable (and often confidential) information related to Melaleuca's business, finances, and strategies;" Kot was in daily communications with Felton, an employee based in Idaho; Kot spoke periodically with Frank VanderSloot, who is based in Idaho; finally, Kot lied to Felton— who was physically in Idaho—when he told him he was leaving Melaleuca China for personal reasons.

Plaintiffs argue that their claims involving the 2011 Agreements arise out of, or are related to, Kot's contacts with Idaho. First, Plaintiffs assert Kot gained access to Melaleuca's confidential information, and that he subsequently shared this information with Shaklee and the public, while in Idaho. This argument is misleading to some degree because the 2011 Confidentiality Agreement only prohibits Kot from sharing "Confidential and Proprietary information" about *Melaleuca China*, the only other party to the contract. Kot no doubt gained access to Melaleuca China's confidential information while in China.

Second, Plaintiffs argue Shaklee only wanted to poach Kot from Melaleuca China because of his training in Idaho, access to information he gained in Idaho, and frequent communications with high level Melaleuca employees in Idaho. This statement is somewhat inconsistent with the pleadings. In their Amended Complaint, Plaintiffs state Kot was valuable to its competitors because of his relationships with independent Marketing Executives in China. *See, e.g.*, Dkt. 39, at 3.

Third, Plaintiffs argue Kot purposely directed misleading communications to Melaleuca personnel in Idaho and that this is sufficient to establish personal jurisdiction over him. Under current law, neither this contact, nor any of the other contacts Plaintiffs listed, are sufficient "minimum contacts" to establish general or specific personal jurisdiction over Kot. Plaintiffs rely heavily on *Dole Food Co., Inc. v. Watts*, particularly at oral argument, in asserting that Kot's contacts with Melaleuca alone are sufficient to establish personal jurisdiction over Kot. *See* 303 F.3d at 1111 ("Th[e expressing aiming] requirement is satisfied when 'the defendant is alleged to have engaged in wrongful

conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.' *Bancroft & Masters, Inc. v. August Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).""). This reliance is misplaced. As one district court recently explained, "the Ninth Circuit's reasoning in *Dole* and *Bancroft* cited by Plaintiffs is simply not consistent with the Supreme Court's decision in *Walden*." *CWT Canada II Ltd. P'ship v. Danzik*, No. CV16-0607 PHX DGC, 2018 WL 571797, at *8 (D. Ariz. Jan. 26, 2018). "Post-*Walden* cases from the Ninth Circuit confirm that 'the defendant's suit-related conduct must create a substantial connection with the forum State,' not simply with a plaintiff who resides there." *Id.* (quoting *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017)).

In *Walden v. Fiore*, the Supreme Court criticized the Ninth Circuit for focusing on the defendant's contacts with the plaintiff as opposed to the defendant's contact with the forum state. 134 S. Ct. at 1124–25. The Court explained, "Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself." *Id.* at 1125 (internal citation omitted). The Court cannot rely on "a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff" in determining personal jurisdiction. *Id.* at 1123. Kot's trips to Idaho for conferences are largely "random, fortuitous, or attenuated contacts" instigated by Plaintiffs. Further, Kot directed

his alleged false statements at Melaleuca, not at Idaho. In making such statements, Kot did not intend to effect the Idaho market or hurt Melaleuca in Idaho. Rather, if he intended to breach the 2011 Agreements, Kot's actions would have injured Plaintiffs in China. He was only breaching an agreement with a Chinese company (Melaleuca China) and that company would have felt the effects of that breach in the Chinese markets. Moreover, Kot's alleged false statements, made in China, were only intended to convince Melaleuca China not to pay Kot a monthly salary. Thus, Kot's statements—although received by an Idaho based employee—were made in China, intended to effect a Chinese company, and intended to effect the Chinese markets. Any negligible effect on Idaho is insufficient to establish personal jurisdiction over Kot.

In sum, the Court has personal jurisdiction over Kot for the purposes of the breach of contract claims concerning the 2010 Agreements. However, the Court does not have personal jurisdiction over Kot for the remainder of the claims. The Court, therefore, cannot hear these claims and must dismiss them. This is an independent reason for dismissing these claims, but it also supports the Court decision to dismiss the claims against Kot on forum non conveniens grounds.

## V. ORDER

The Court hereby ORDERS:

1. Kot's Motion to Dismiss (Dkt. 47) is GRANTED IN PART consistent with the above analysis. Plaintiffs' claims against Kot are dismissed and Plaintiff must pursue them in China. The portions of the Motion to Dismiss not discussed in the above decision are DENIED AS MOOT.

MEMORANDUM DECISION AND ORDER –28

2.  Shaklee's Motion to Dismiss for Forum Non Conveniens (Dkt. 43) is DENIED.

    Plaintiffs' claims against Shaklee Corp. remain in this lawsuit.

3.  Plaintiffs' Amended Motion for Preliminary Injunction (Dkt. 40) is DENIED AS

    MOOT.

DATED: April 24, 2018

David C. Nye
U.S. District Court Judge